# UNITED STATES v. ST. ANTHONY RAILROAD COMPANY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 147. Argued January 28, 1904.—Decided February 23, 1904.

Although a liberal construction of a statute may be proper and desirable, yet the fair meaning of the language used must not be unduly stretched for the purpose of reaching any particular case which, while it might appeal to the court, would plainly be beyond the limitations contained in the statute.

Without defining the exact distance within which lands must lie in order to be "adjacent" to a railroad passing through territory of the United States, public lands lying in Idaho, more than twenty miles from a two hundred foot right of way of a railroad, not exceeding forty miles in length, are not "adjacent public lands" within the meaning of the act of March 3, 1875, 18 Stat. 482, permitting railroad companies to cut timber therefrom for the construction of their roads.

A railroad company cutting timber for the construction of its road on public lands not adjacent thereto is liable to the United States for the value thereof and where there is no intention to violate any law or do a wrongful act, the measure of damages is the value of the timber at the time when, and at the place where, it was cut and not at the place of its delivery. *Wooden-ware Co.* v. *United States,* 106 U. S. 432, and *Pine River Logging Co.* v. *United States,* 186 U. S. 279, distinguished.

This action was brought by the United States against the railroad company to recover damages for the unlawful cutting down and conversion by the company, in the year 1899, of certain timber on the public lands belonging to the United States in the State of Idaho. The value of the timber thus cut was, as alleged, over $20,000. The trial was had in the Circuit Court of the United States for the District of Idaho, Southern Division, and resulted in a judgment dismissing the complaint, which was affirmed, upon appeal, by the Circuit Court of Appeals, Ninth Circuit, 114 Fed. Rep. 722, and the government has appealed to this court.

The defendant answered the complaint and denied its averments as to unlawfully entering upon the lands and cutting

the timber. As a further and separate defence the defendant averred that it was duly incorporated on May 18, 1899, under and pursuant to the laws of the State of Idaho, for the purpose of constructing and operating a railroad from the town of Idaho Falls in Bingham County, Idaho, to St. Anthony in Fremont County, in that State, a distance of approximately forty miles. On or about July 7, 1899, the board of directors duly adopted the route for the railway, which was practically a straight line between the town of Idaho Falls and the town of St. Anthony; and passed through and over the public lands of the United States. The defendant fully performed all things required by railroad companies by the act of Congress granting to railroads the right of way through the public lands of the United States, approved March 3, 1875, and it thereby became entitled to the benefit of the privileges therein granted to railroad companies. For the purpose of procuring the necessary material with which to construct its railroad, the defendant, through its authorized agents, entered upon the lands described in the complaint, which were, as defendant alleged, adjacent to the line of the railroad, for the purpose of procuring ties and timbers for the construction of the road, and did during the summer and fall of 1899 cut and remove timber growing on the lands, not to exceed 1,682,975 feet; that the ties and timbers were cut from the nearest public lands to said line of road, and were, as the defendant averred, adjacent thereto; that all of the ties and timbers were necessary for the original construction of the road, and were used for that purpose, and the defendant cut and removed the timber in good faith, with no intention of violating any law or committing any trespass, but believing that it had the right to enter upon the lands and take the timber.

For the purpose of the trial there was an agreed statement of facts made, and therein it was stated that the cutting of the timber was upon the lands of the government and the amount thereof was correctly stated in the answer, and its value upon delivery to the defendant was as alleged in the complaint.

The defendant did not act under any mistake of fact in regard to the status of the timber and the lands upon which it grew, and did what was done, believing it had the legal right so to do. It is not disputed that the lands were unoccupied, unentered public lands of the United States.

Upon the question whether the lands where the timber was cut were or were not adjacent, it was agreed:

"That said lands from the place where said timber was cut to the line of the road were and are the following distances, namely: from 17 to 23 miles by air line; from 20 miles to 25 miles by wagon road, and from 22 to 26 miles following the sinuosities of the river upon which said timber was in part conveyed. By far the largest part of the timber was driven or rafted down said river from said lands to said railroad, the other part being hauled by wagon. The wagon road referred to and so used is an ordinarily good road and involves no unusual grades, and said timber could with reasonable profit be hauled by wagon from the place where it was cut to said railroad, where it was used for ties and in the construction of bridges. It is further agreed that there were no other timber lands or suitable timber upon either side of said railroad as near as were the land and timber in question, and that said lands are near enough and so located with reference to said railroad as to be directly and materially benefited thereby."

The statute under which the cutting is justified is section 1 of "An act granting to railroads the right of way through the public lands of the United States," approved March 3, 1875, 18 Stat. 482; 2 Comp. Stat. 1658, and is set forth in the margin.[1]

---

[1] *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent

*Mr. Assistant Attorney General Purdy* for the United States:

The importance of this case to the Government cannot be measured by the value of the timber which is involved in this suit. I do not exaggerate when I say that timber worth millions of dollars is the subject of suits now pending or about to be instituted by the Government in which the sole question at issue is the proper meaning of the word *adjacent* as used in this and similar acts of Congress. The Government has from the first contended that the word *adjacent* as used in this law has reference to a comparatively narrow belt of public land situated on either side of the railroad company's right of way. In view of litigation now pending, and the great material interests involved, the Government feels especially called upon at this time to earnestly maintain that the word *adjacent* ought not to be construed as applicable to public lands more than two miles distant from a railroad company's right of way.

The Government's contention is that under the facts in this case the public lands from which the timber was cut and removed by the Railroad Company and its agents, and used by it in the construction of its line of road, were not *adjacent* lands within the meaning of said act of Congress.

As to the ordinary meaning of the word "adjacent," as defined by lexicographers, it is manifest that the word is a relative term and that in order to ascertain its true meaning in any given case resort must be had to the context and the character of the objects with reference to which the word is used. See Century Dictionary and Cyclopedia; Crabbe's English Synonyms; Bouvier's Law Dict.; Black's Law Dict.; Anderson's Dict. of Law. The word has been defined in cases in the Federal courts in *United States* v. *Den. & R. G. R. R. Co.*, 31 Fed. Rep. 886; *United States* v. *Chapin*, 31 Fed. Rep. 890; *In re Den. & R. G. R. R. Co.*, 8 Land Dec. 41. But see *In re Kootenai Valley R. R. Co.*, 28 Land Dec. 439; *Den. & R. G. R.*

---

to such right of way for station-buildings, depots, machine shops, sidetracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

*R. Co.* v. *United States*, 34 Fed. Rep. 838; *United States* v. *Den. & R. G. R. R. Co.*, 150 U. S. 1; *United States* v. *Linde*, 47 Fed. Rep. 297; *United States* v. *Stone*, 64 Fed. Rep. 667; *S. C.*, *sub nom. Stone* v. *United States*, 167 U. S. 178; *Bacheldor* v. *United States*, 83 Fed. Rep. 986.

It will be seen that this court has, in effect, held that lands situated 50 to 100 miles distant from a railroad company's right of way are not adjacent lands within the meaning of the law, while on the other hand the Circuit Courts of Appeal for the Eighth and Ninth Circuits have held that lands lying at a distance of 17 to 25 miles from a railroad company's right of way are adjacent. This case clearly presents to this court for the first time the question whether these decisions are correct, and whether it can be said as a matter of law or fact that under even the most liberal interpretation of this statute, lands lying at so great a distance from a railroad company's right of way can be held to be *adjacent* lands within the meaning of the act.

The Government maintains that inasmuch as the precise meaning of this term as used in the statute is uncertain, it was the duty of the Land Department, having in charge the public lands, to place a reasonable interpretation upon the statute, and that this was done in 1887 by Secretary Vilas, when he held that two miles on either side of the railroad company's right of way embraced what should be understood as adjacent lands within the meaning of this law; such an interpretation is reasonable and sufficient to afford the companies all the rights and privileges proper under the act.

Definitions of "adjacent" in state courts. *Henderson* v. *Long*, 1 Cook (Tenn.), 128; *Henderson* v. *Long*, 11 Fed. Cas. 1084, No. 6354; *New York* v. *Hartford*, 16 Hun (N. Y.), 380; *Miller* v. *Cabell*, 81 Kentucky, 184; *Camphill Borough*, 142 Pa. St. 517; *In re Municipality for Opening Roffignac Street*, 7 La. Ann. 76; *People* v. *Schermerhorn*, 19 Barb. (N. Y.) 556; *People* v. *Land Office Commissioner*, 135 N. Y. 447; *Saunders* v. *N. Y. Central R. R. Co.*, 135 N. Y. 613; *Clapton* v. *Taylor*,

49 Mo. App. 118; *Carrier* v. *Schoharie Turnpike Co.,* 18 Johns. (N. Y.) 57; *Continental Imp. Co.* v. *Phelps,* 47 Michigan, 300; *Brooklyn R. R. Co.* v. *Brooklyn,* 18 N. Y. Supp. 876; *Kent* v. *Perkins,* 36 Ohio St. 639.

In English cases. *Kimberly Water Works* v. *De Beers Consolidated Mines,* 66 L. J. P. C. 108; *Birmingham* v. *Allen,* 46 L. J. C. H. 673; *Darley Main Co.* v. *Mitchell,* 11 App. Cas. 142; *Rex* v. *Hodgkins,* M. & H. 341; *Regina* v. *Brown,* 17 Q. B. 836.

While these cases are not of much assistance in ascertaining the precise meaning of the word *adjacent,* as used in the act of Congress of March 3, 1875, they nevertheless show that the word *adjacent,* when used in any particular context, must receive a reasonable construction and one which will protect the interests of all parties concerned. It does not mean that a license is thus given to put such a construction upon the word as would embrace matters not reasonably contemplated by the parties. And while it is a term which is susceptible of different constructions and may, under the particular facts in each case, convey to different minds different ideas as to distance, the idea conveyed must in every instance be that of "proximity" or "nearness," that which is far distant or remote being necessarily excluded.

*Mr. Parley L. Williams* for defendant in error:

The act should be liberally construed. *United States* v. *Chaplin,* 31 Fed. Rep. 890; *United States* v. *Den. & R. G. R. R. Co.,* 150 U. S. 1. As to definition of "adjacent," see authorities and cases cited on the Government's brief, and also Worcester's Dict; Webster's Internat. Dict.; Standard Dict.; Encyclopædic Dict.; *United States* v. *Nor. Pac. R. R. Co.,* 29 Alb. Law J. 24; 1 Ency. Law (2d ed.), 633.

If the Government is to recover it is entitled to "stumpage" only. See authorities cited in *Wooden Ware Co.* v. *United States,* 106 U. S. 432. As to wilfulness and legal malice which did not exist in this case, see *Bowers* v. *State,* 24 Tex. App. 542; *Railroad Co.* v. *Nash* (Ind.), 24 N. E. Rep. 884; *State* v. *Preston,*

34 Wisconsin, 682, and cases cited; *Clark* v. *Holdridge*, 43 N. Y. Supp. 115; *S. C.*, 12 App. Div. 613; *Winchester* v. *Craig*, 33 Michigan, 205; *Forsyth* v. *Wells*, 41 Pa. St. 291; *Baker* v. *Drake*, 53 N. Y. 211; *Markham* v. *Jaudon*, 41 N. Y. 235; *Heard* v. *James*, 49 Mississippi, 236; *Gaskins* v. *Davis* (N. Car.), 25 L. R. A. 813; *United States* v. *Nor. Pac. R. R. Co.*, 67 Fed. Rep. 503, 890; Sedgwick on Damages (5th ed.), 503.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The important question in this case is as to the meaning of the term "adjacent" when used in the first section of the statute of 1875. The act is a general one, and is therefore applicable to no particular road, except as the facts in each case may bring the road within its language. It grants the right of way through the public lands in the United States upon conditions named, to the extent of 100 feet on each side of the central line of the road. The lands from which materials for the construction of the railroad may be taken must be adjacent to this piece of land but two hundred feet wide. The term is a somewhat relative and uncertain one, and in one aspect the case may be determined with at least some reference to the size of the strip or right of way granted, and to which the land must be adjacent. It may also be remembered that the whole length of the road is but forty miles. In some views of the case the narrowness and shortness of the line might have some effect upon the question of the distance to which the word adjacent might carry one in the search for timber. As the word is frequently uncertain and relative as to its meaning, it might naturally perhaps be regarded as more extended when used with reference to a large object than with reference to a comparatively small one. In other words, it must be defined with reference to the context, at least to some extent.

We are not disposed to unduly limit the meaning of the word as used in the statute so as to exclude lands which might other-

wise fairly be regarded as within its purpose and thereby defeat the intent of Congress. The act is not to be construed in an unnecessarily narrow manner, nor at the same time should the construction of its language be extraordinarily enlarged in order to attain some special and particular end. In *United States* v. *Denver &c. Railway*, 150 U. S. 1, another question arose under this same section, and the construction of the act in that regard was certainly as liberal as its language would warrant. It was there held that a railroad company had the right to cut and take the timber or material from public lands adjacent to the line of the road and use the same on portions of its line remote from the place from which it was taken.

In speaking of the proper construction of the act, it was said by Mr. Justice Jackson, for the court:

"It is undoubtedly, as urged by the plaintiffs in error, the well-settled rule of this court that public grants are construed strictly against the grantees, but they are not to be so construed as to defeat the intent of the legislature, or to withhold what is given either expressly or by necessary or fair implication. In *Winona & St. Peter Railroad* v. *Barney*, 113 U. S. 618, 625, Mr. Justice Field, speaking for the court, thus states the rule upon this subject: 'The acts making the grants . . . are to receive such a construction as will carry out the intent of Congress, however difficult it might be to give full effect to the language used if the grants were by instruments of private conveyance. To ascertain that intent we must look to the condition of the country when the acts were passed, as well as to the purposes declared on their face, and read all parts of them together.'

"Looking to the condition of the country, and the purposes intended to be accomplished by the act, this language of the court furnishes the proper rule of construction of the act of 1875. When an act, operating as a general law, and manifesting clearly the intention of Congress to secure public advantages, or to subserve the public interests and welfare by means of benefits more or less valuable, offers to individuals

or to corporations as an inducement to undertake and accom-
plish great and expensive enterprises or works of a *quasi* public
character in or through an immense and undeveloped public
domain, such legislation stands upon a somewhat different foot-
ing from merely a private grant, and should receive at the
hands of the court a more liberal construction in favor of the
purposes for which it was enacted. *Bradley* v. *New York &
New Haven Railroad*, 21 Connecticut, 294; Pierce on Railroads,
491.

"This is the rule, we think, properly applicable to the con-
struction of the act of 1875, rather than the more strict rule of
construction adopted in the case of purely private grants; and
in view of this character of the act, we are of opinion that the
benefits intended for the construction of the railroad, in per-
mitting the use of timber or other material, should be extended
to and include the structures mentioned in the act as a part of
such railroad."

It was also said that the railroad should be treated "as an
entirety, in the construction of which it was the purpose of
Congress to aid by conferring upon any railway company,
entitled to the benefits of the act, the right to take timber
necessary for such construction from the public lands adjacent
to the line of the road. This intention would be narrowed, if
not defeated, if it were held that the timber, which the railway
company had the right to take for use in the construction of
its line, could be rightfully used only upon such portions of
the line as might be contiguous to the place from which the
timber was taken. If Congress had intended to impose any
such restriction upon the use of timber or other material taken
from adjacent public lands, it should have been so expressed.
No rule of interpretation requires this court to so construe the
act as to confine the use of timber that may be taken from a
proper place for the purpose of construction to any particular
or defined portion of the railroad. To do this would require
the court to read into the statute the same language, as to the
place of use, which is found in the statute as to the place of

taking. In other words, it would require the court to inter-polate into the statute the provision that the place at which the timber shall be used shall be '*contiguous, adjoining or adjacent*' to the place from which it is taken. The place of *use* is not, by the language of the statute, qualified, restricted or defined, except to the extent of the construction of the railroad as such, and it is not to be inferred from the restriction or limitation imposed as the *place* from which it may be rightfully taken that it is to be used only adjacent to such place."

In the above case it was admitted that the lands from which the timber was taken were adjacent to the line of the road within the meaning of the statute.

It is also seen in the extract from the opinion that the word "adjacent" is therein used in connection with the words "contiguous" and "adjoining," so as to give an impression that it is almost, though not entirely, synonymous with those words. And we think this is true. "Contiguous, lying close at hand, near," is the meaning given it by the lexicographers. It need not be adjoining or actually contiguous, but it must be, as said, near or close at hand.

Although a liberal construction of the statute may be proper and desirable, yet the fair meaning of the language used must not be unduly stretched for the purpose of reaching any particular case which, while it might appeal to the court, would yet pretty plainly be beyond the limitation contained in the statute. While not to be construed so as to defeat the intent of the legislature, or to withhold what is given either expressly or by fair implication, it is surely improper to so extend the ordinary and usual meaning of the word as to permit the railroad company to enter upon any land of the government, as being adjacent, simply because the road wants the timber. The statute was not intended to furnish a general license to the company to enter upon any public land and to range to any extent thereon for timber for its road. In all cases it must be adjacent.

In the lower Federal courts there have been some cases in

which the question of the proper construction of this section
of the act of Congress received attention. In *United States* v.
*Denver & Rio Grande Company*, 31 Fed. Rep. 886, that land
was regarded as adjacent which could be reached by ordinary
transportation by wagons. The parties in that case agreed
that the timber was cut from lands adjacent to the line of
railway, and the question was whether timber thus cut could be
taken from lands adjacent to the line of road and used on any
part of the line. But the meaning of the word was referred
to in the opinion, and it was stated that it depended very much
upon the context and the subject matter to which it should
be applied for its proper effect; that with reference to the lands
which might be taken for stations, sidetracks, etc., the word
"adjacent" was used in the same sense of "contiguous" or
"adjoining," while with reference to material for building the
road the word should have the larger significance of nearness
without actual contact. It was said to be unreasonable to
limit the meaning of the word to the government subdivisions
lying next to the right of way, and it was said that the meaning
of the term "adjacent" probably included the right to take
timber from public lands within ordinary transportation by
wagon. This meaning was arrived at because the company
could thus avail itself of all timber which could be so trans-
ported with a profit to the company, while excluding other
lands from which transportation with profit could not be thus
effected. We are not satisfied of the correctness of this con-
struction or of its reasonableness. Lands might in this way
be found adjacent which were fifty or a hundred or more miles
away, and which could not be regarded as adjacent within any
meaning of that word heretofore given, and could only be said
to be adjacent in order to serve an exigency and to allow a
railroad to procure timber gratuitously from the government.
The purpose may, perhaps, be good, but the meaning cannot
be stretched too far, even to accomplish a possibly desirable end.

Again, in *United States* v. *Chaplin*, 31 Fed. Rep. 890, it was
held, in the Circuit Court, District of Oregon, that land was

adjacent to the line of road within the purpose and intent of the act when, by reason of its proximity thereto, it is directly and materially benefited by the construction of such road! The court said in that case:

"What is 'adjacent' land, within the meaning of the statute, must depend on the circumstances of each particular case. Where the 'adjacent' ends and the non-adjacent begins may be difficult to determine. On the theory that the material is taken on account of the benefit resulting to the land from the construction of the road, my impression is that the term 'adjacent' ought not to be construed to include any land save such as by its proximity to the line of the road is directly and materially benefited by its construction."

We fail to see the correctness of this rule. Lands hundreds of miles distant might be directly and materially benefited by the construction of a railroad, and yet be far beyond the utmost extent heretofore supposed to be included by the word adjacent. To give this extended meaning to the word is, as it seems to us, merely to say that Congress might have included lands for that reason if it had so chosen, and, therefore, it is well enough to enlarge the ordinary meaning of the word to accomplish a purpose not plainly stated, but only guessed at.

In *Denver &c. Railroad* v. *United States*, 34 Fed. Rep. 838, while the question as to what were adjacent lands was not in issue, as the fourth paragraph in the agreed statement of facts stipulated that the lands from which the timber was cut were adjacent to the line of railway, yet Mr. Justice Brewer, then Circuit Judge, in his opinion said that he did not agree with the idea that the proximity of the lands was immaterial, or that Congress intended to grant anything like a general right to take timber from public lands where it was most convenient. He said that while the grant was limited to adjacent lands, he did not appreciate the logic which concludes that if there be no timber on adjacent lands, the grant reaches out and justifies taking the timber from distant lands fifty or a hundred miles away. The real question in the case was whether timber taken

from land which was adjacent could be taken to any portion of the road, no matter how distant from the place of cutting. As it was agreed the timber taken was adjacent, it does not appear how far from the line of the road it was cut. The Circuit Judge, overruling in this respect the District Judge, held the timber could be used all along the line of the road. This is the same view subsequently taken by this court in 150 U. S. *supra.*

In *Bacheldor* v. *United States*, 83 Fed. Rep. 986, it was held by the Circuit Court of Appeals that under the act of June 8, 1872, 17 Stat. 339, which uses language similar to the section in question, the cutting of timber 25 miles from the road was not, as matter of law, unlawful. The question whether the lands were adjacent was held to be a mixed question of law and fact, and the test of illegality was whether the timber was within reasonable hauling distance by wagons. The judgment of the court below, 48 Pac. Rep. 310, was therefore reversed.

In *Stone* v. *United States*, 64 Fed. Rep. 667, it was held that the act in question did not authorize the taking of timber for the construction of a road from public lands, which were 50 miles distant from the end of the road. That case was affirmed in this court. 167 U. S. 178. The trial court had charged the jury that, under the act of 1875, the term "adjacent lands" means lands in proximity, contiguous to, or near to the road, and that lands so far distant from the railroad as lands in Kootenai County, Idaho, where it is claimed that the railroad ties were cut, were not adjacent lands within the meaning of the law. This court concurred with the Circuit Court of Appeals in adjudging the charge to be a sound interpretation of the act.

The report in the *Stone* case showed, as stated in the opinion of the Circuit Court of Appeals, that no timber fit for its use was found along the line of either of the railroads, that both of them penetrated a barren region, almost entirely destitute of timber, and that timber was cut from the lands along the

line of the Northern Pacific Railroad about fifty miles distant from the eastern end of the other roads, which was the nearest point where available timber could be had.

We thus have the authority of this court that lands which are adjacent within the meaning of this act of 1875 must be lands in proximity, contiguous or near to, the line of the road. While "proximity" or "nearness" to an object is somewhat uncertain as a measure of distance, yet the use of such words as a definition, brings to the mind the idea that lands which are in fact far off, or distant, are not adjacent. And the question is, whether lands which are twenty miles off can reasonably be described as in proximity or near to a line of road a couple of hundred feet wide. In our belief no one in describing the locality of such lands would say they were adjacent to the railroad.

The above cited cases show a conflict in the minds of the Federal judges, as to what are the material facts upon which to base an answer to the question, when are lands adjacent within the meaning of this statute. "Adjacent," we admit, is a relative term, and sometimes may depend for its proper application upon the facts in the particular case.

The matter of the construction of this language was the subject of a letter from Mr. Vilas, who was then Secretary of the Interior, to the Attorney General, dated January 10, 1889, after the decision of the cases in 31 Fed. Rep. *supra.* The Secretary was of the opinion that while nothing in the term "adjacent," as used in the statute, rendered it necessary to imply that the lines of survey should be resorted to to define its extent, there was at the same time nothing in this indefiniteness, which, in his opinion, could authorize the view that timber or other material could be taken from public lands so far away as may be reached by wagon transportation in a single day, or any other given period of time. He thought that the use of the word "adjacent" intended and meant the right to the public lands which were *conveniently contiguous to the right of way and immediately accessible from it,* and he did not believe

that it was the purpose of Congress or that his department ought to decide that the railroad company could range the public lands to secure material for the construction of the road, when it did not happen to exist on those lands which, in the ordinary acceptance of the phrase, would be regarded as adjacent to the right of way. Taking into consideration the whole case, the Secretary was of opinion that it was—

"As far as sound discretion will warrant executive officers to go until an authoritative decision by the courts, to hold that, under this phrase, material may be taken from the tier of sections through which the right of way extends, as immediately adjoining the right of way, and perhaps an additional tier of sections on either side, as within the idea of 'adjacency.' . . . In view of all the facts and considerations applicable, it is believed the definition and rule given are fair and just, and legitimately to be adopted. I think it wiser and safer to pursue such a rule, subject as it is to review by the courts, than to leave the matter open to the varying notions of different officers or the necessities of the companies."

There is in our judgment much to be said in favor of this view of the statute. It falls in with the general system adopted by the United States for the survey of its public lands. Those sections touching the line of the road would of course be included within the term, while those next to them might also be included, because, although not touching, they would be near to such line, and would, therefore, come within any definition of the term as being close or near to the line without being contiguous to or actually touching it. It is not at all unreasonable to say that very probably Congress had in mind this general system of division of the public lands, and that the word "adjacent" would properly be interpreted with respect thereto. If the word "adjoining" had been used instead of "adjacent," those sections touching the line of the road could be regarded as the adjoining lands, and when the word "adjacent" instead of "adjoining" is used, it might, not unnaturally, be said to include the next tier of sections away

from the line of the road.   We do not think that sections still further removed could under this rule be regarded as adjacent. The rule also gives certainty and definiteness to an otherwise somewhat doubtful expression, and, as the Secretary says, prevents the companies from ranging the public lands to secure material for the construction of their roads, and thus raising questions of legality in cutting in almost every case where the lands were beyond the sections described by the Secretary.   This alone is an important consideration.

If not bounded by section lines, the term "adjacent" becomes of more or less uncertain meaning.   We cannot, however, conclude that within any fair construction of the statute, these lands were in any event adjacent to the line of the road. The word is also used in the same section, when speaking of the use of ground adjacent to the right of way for purposes of depots, machine shops, etc.   In such use it is clear the word is greatly limited.   We take it there is a limit beyond which lands could not be described as adjacent to the line of the railroad, even if they were benefited by its construction and were the nearest public lands upon which timber could be found and the timber thereon could be transported by wagon with profit to the company.   Lands which are twenty miles off we cannot regard as adjacent to the line of a railroad within the meaning of this statute.   On the other hand, lands within two miles, we assume all would agree, are so adjacent.   Now, at what point between these two extremes lands are on one side adjacent and on the other not adjacent, is a very difficult matter to decide.   It is necessarily somewhat vague and uncertain, and we are not called upon to determine it in this case. All we have to do now is to declare that lands as far off as the lands in question are not adjacent lands, and it is unnecessary to say at what point on the intervening lands adjacency begins. It is very difficult to determine just where twilight ends and night begins; but it is easy enough to distinguish noon from midnight.   If we say that two miles would be within the term and twenty would be beyond it, it might be asked why nineteen

miles would not also be beyond it, or three miles be within it, and these questions might puzzle one to answer. It can only be said that a distance of twenty miles is beyond it any way and two miles would be within it. If, then, short distances be proposed and an answer requested as to whether they are or are not within or without the limit, each division might be so small that no clear and decided difference could be asserted between it and the land immediately adjoining, and so it might result in no difference being stated between two and twenty, and yet we know there is a division and it lies somewhere between those two points. The nearer an approach is made to a junction between what is stated to be the adjacent and the non-adjacent lands, the more difficult it becomes to show any difference warranting a different decision, and yet, as we have said, there is a point at which there can be no doubt. We think twenty miles is certainly beyond any fair distance in which lands could be said to be adjacent to the line of this road. And we say this while fully recognizing and keeping in mind the liberal rule of construction set forth by this court in the *Denver Railroad case,* 150 U. S. 1, *supra.* We appreciate the fact that the act was passed to "secure public advantages and to subserve the public interests," but nevertheless it does not grant free license to roam the public lands and take timber wherever thereon it may be found, or wherever by possibility it might be taken with profit to the company. The statute says that the lands must be adjacent, and there must of necessity therefore be a point where the lands are not adjacent, even though the timber might be removed therefrom with some possible profit to the company. As Congress has not given the definition of adjacent, such as has been adopted by any of the lower courts, we cannot, even by a so-called liberal construction, enlarge the ordinary meaning of the word to the extent made necessary in order to justify this cutting.

We cannot take, for the reasons already stated, the fact of wagon road transportation, as a means of deciding whether the lands are or are not adjacent, for it seems to us that it may lead

us far beyond any reasonable limit to the word.  The same may be said as to the benefits to the land by the building of the road.  That also would in many cases lead too far from the line.  In this case most of the transportation was done by water, the timber being driven or rafted down the river, and in that way the distance was from twenty-two to twenty-six miles, although such timber might have been hauled by wagon with reasonable profit.  Now, suppose the nearest timber lands of the government were a hundred miles away, but by reason of water communication the timber could be floated down to the line of the road "with reasonable profit," would such lands then be adjacent?  We think clearly not.  And it is because of the fact that the distance would be plainly too great to conform to any of the meanings which have heretofore been given to the word.  It strikes one so at first blush.  We are of opinion that the same ought to be said of these lands.  They are not adjacent, for they are not near; they are not in close proximity to this strip of land two hundred feet wide.  This ordinary limitation of the meaning of the word should not be enlarged for the purpose of thereby embracing lands which otherwise would not come within any fair construction of the statute.

The further question is as to the time when the value of the timber is to be ascertained.

The parties agreed that the amount of the timber growing on the lands is correctly stated in the answer, and the value thereof at the place where the timber was cut was $1.50 per thousand feet and the value upon delivery to the defendant was $12.35 per thousand feet.  The delivery to the defendant was made by the Thompson Mercantile Company, with which the railroad company had entered into a contract to be supplied with the necessary ties and timbers for the construction of its road, and in such contract the mercantile company was, by the expressed terms thereof, appointed the agent of the defendant, and in that capacity it was authorized by the defendant to cut timber for the purpose mentioned.  The

mercantile company did cut the timber on the lands, which it in good faith supposed were adjacent to the line of the railroad, and delivered such timber to the railroad company upon the line of its road. We think the measure of damages should be the value of the timber after it was cut at the place where it was cut. The defendant does not, in our judgment, come within either the case of *Wooden-ware Company* v. *United States*, 106 U. S. 432, or that of *Pine River Logging Company* v. *United States*, 186 U. S. 279. In both of those cases the parties doing the cutting did it willfully and in bad faith. In the *Wooden-ware* case the timber was sold by the original trespasser to a third party without notice of the trespass, and the party purchasing was guilty of no willful wrong. It was, however, held that the defendant, having purchased from the original wrongdoer and willful trespasser, was liable for the value of the timber at the time and place it was purchased by defendant.

In the *Pine River Logging* case, the parties to the contract were held liable for the full value of the timber after it was cut and had increased in value by reason of the labor expended upon it by the parties who did the cutting. This was on the ground that they were willful trespassers, acting in bad faith, and ought to be made to suffer some punishment for their depredations; but it was stated that where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern.

Although in this case it is agreed that the defendant did not act under a mistake, meaning thereby that the facts touching the status of the timber and the lands where the timber was cut were known, yet what was done was in the belief by the defendant that the lands were adjacent to the line of the road and that the cutting was legal. It was done upon the advice of counsel, and the defendant used ordinary care and prudence in first being advised as to the law upon the facts as they have been agreed upon, and there was no intention on the part of

the defendant to violate any law or to do any wrongful act. This, we think, clearly takes the case out of the principle of those above cited, and the measure of damages must, therefore, be the value of the timber at the time and at the place where it was cut.

The judgment must be reversed, and the case remanded to the Circuit Court for the District of Idaho, Southern Division, with directions to enter judgment in favor of the United States for the amount of the timber as stated in the answer, and for its value at the rate of $1.50 per thousand feet.

*So ordered.*