## UNITED STATES v. PAN–AMERICAN PETROLEUM CO. et al.

District Court S. D. California. N. D. May 10, 1927.

Supplemental Opinion, October 7, 1927.

**1. Appeal and error ⬅1194(1)—Direction in mandate to proceed consistently with appellate courts' opinions makes such opinions part of mandate.**

Direction in mandate of Supreme Court that District Court proceed consistently with opinions of the appellate courts has effect of making such opinions a part of mandate as though at length set out therein.

**2. Appeal and error ⬅1207(1)—Mandate and opinions of appellate courts held to require granting all relief sought by government suing to cancel oil leases and contracts for fraud.**

In government's suit to cancel oil leases and contracts for fraud, Supreme Court's mandate directing District Court to proceed not inconsistently with opinions of Circuit Court of Appeals and Supreme Court, which stated that government was not required to credit defendants with cost of improvements constructed by them on government lands because defendants were wrongdoers and trespassers thereon, *held* to constitute a direction to grant relief sought by government without condition or diminution.

**3. Interest ⬅66—Allegations in government's bill to cancel oil leases for fraud held to entitle government to interest on property converted without specifically demanding it in pleadings.**

Where bill in government's suit to cancel oil leases and contracts for fraud alleged that government's property was converted by defendants, and prayed complete accounting, government, if entitled to relief sought, would also be entitled to interest on value of property converted without necessity of a specific demand therefor in its pleadings.

**4. Mines and minerals ⬅5—On cancellation of oil leases government held entitled to interest on value of property unlawfully converted by defendants wrongfully trespassing on government lands.**

On cancellation of oil leases and contracts for fraud, government was entitled to interest on value of oil and other property converted by defendants as damages for defendants' wrongful and willful trespass on public lands and the unlawful conversion thereunder of government's property.

**5. Trover and conversion ⬅53—In California, interest is allowable for conversion, in addition to value of property, plus converter's profits (Civ. Code Cal., §§ 1915, 3287).**

Under Civ. Code Cal., §§ 1915, 3287, defining interest and providing when it is recoverable as damages, interest is allowable to injured owner whenever a tort-feasor by willful and wrongful trespass has converted property unlawfully, in addition to recovery of the converted property or its value at the time of conversion, plus any profit converter may have made thereon.

**6. Interest ⬅31—On cancellation of oil leases for fraud, government held entitled to 7 per cent. interest on value of property converted; rate being legal rate where property was located (Civ. Code Cal. 1915, § 1917; Gen. Laws Cal. Act 3757).**

On cancellation of oil leases and contracts for fraud, government was entitled to interest on its oil and other property unlawfully converted by defendants at the legal rate established in California, where property taken by defendants was located at the time of conversion, under Civ. Code Cal., 1915, § 1917, and Gen. Laws of Cal. Act 3757, fixing legal rate as 7 per cent. per annum.

**7. Interest ⬅26—In suit to cancel oil leases, government by failing to prevent further taking of royalty oil after appointment of receivers, waives right to interest on oil subsequently taken (Civ. Code Cal. § 3287).**

Where government applied for and obtained appointment of receivers to take possession of property involved in government's suit to cancel oil leases and contracts for fraud, but failed to take steps to prevent further taking of royalty oil and in fact permitted one of defendants to remove such oil from reserve thereafter, it thereby waived its right to interest on any additional obligation of such defendant subsequently created, under Civ. Code Cal. § 3287.

### Supplemental Opinion.

**8. Interest ⬅22(3)—Federal court decree in equity ex propria vigore does not carry interest subsequent to its date.**

A federal court decree in equity ex propria vigore does not carry interest subsequent to its date.

In Equity. Suit by the United States against the Pan-American Petroleum Company and another. On motion of the United States for entry of final decree on the mandate of the Supreme Court. Decree in accordance with opinion.

Atlee Pomerene, of Cleveland, Ohio, Owen J. Roberts, Sp. Counsel, of Philadelphia, Pa., and Samuel W. McNabb, U. S. Atty., of Los Angeles, Cal., for the United States.

Frederic R. Kellogg, of New York City, Frank J. Hogan and Joseph J. Cotter, both of Washington, D. C., Henry W. O'Melveny, Walter K. Tuller, Charles Wellborn, Olin Wellborn, Jr., Olin Wellborn, III, and Marc F. Mitchell, all of Los Angeles, Cal., Dean Emery, of New York City, and Harold Walker, of Washington, D. C., for defendants.

McCORMICK, District Judge. The matter at issue herein arises on a motion of plaintiff for entry of final decree in this suit upon the mandate of the Supreme Court of the United States herein which has been received in this court and spread upon its minutes.

It is unnecessary to here review the history of this action or to recount the proceedings therein since the entry of this court's decree on July 11, 1925. It is sufficient to say that such decree was on the 4th day of January, 1926, partly affirmed and partly reversed by the Circuit Court of Appeals for the Ninth Circuit (9 F.[2d] 761) and the suit remanded here for further proceedings in accordance with the opinion of said Circuit Court of Appeals, and that thereafter, to wit, on February 28, 1927, upon a writ of certiorari, the Supreme Court of the United States (273 U. S. 456, 47 S. Ct. 416, 71 L. Ed. 734), affirmed said decree of said Circuit Court of Appeals and remanded this cause to this court, where it now is for the purpose of obeying said mandate and entering final decree pursuant to such mandate and the opinions of the Supreme Court of the United States and of said Circuit Court of Appeals.

Plaintiff has presented under the rules a proposed final decree in which the defendant companies, respectively, are ordered to pay to plaintiff in the case of the Pan-American Petroleum & Transport Company, which will be hereinafter referred to as the transport company, the sum of $9,889,299.51, and in the case of the Pan-American Petroleum Company, which will be hereinafter referred to as the petroleum company, the sum of $1,556,861.17. It is admitted by the defendant companies that the final decree herein must order the payment of such aggregate amounts of money against the respective companies. Plaintiff also demands interest on the value of the oil, gas, and other petroleum products extracted, taken, received, or removed from the naval oil reserves under the pretended authority of the contracts and leases in suit from the time of the conversion thereof to the date of the entry of the decree herein at the rate of 7 per cent. per annum. Defendants contest such demand to such or any interest at this time; and the questions for decision are whether interest should be allowed and to what extent.

The power of this court to decide the questions is the matter of first importance. The measure of the court's power is the mandate of the Supreme Court. Its pertinent parts read:

"Whereas lately in the United States Circuit Court of Appeals for the Ninth Circuit, in a cause between Pan-American Petroleum Company and Pan-American Petroleum & Transport Company, appellants, and the United States of America, appellee, No. 4651, 9 F.(2d) 761, wherein the decree of the said Circuit Court of Appeals, entered in said cause on the 4th day of January, A. D. 1926, is in the following words, viz.:

"'This cause came on to be heard on transcript of the record from the District Court of the United States for the Southern District of California, Northern Division, and was duly submitted. On consideration whereof, it is now here ordered, adjudged, and decreed by this court that the decree of the said District Court in this cause, so far as it awards affirmative relief to the United States in ordering the cancellation of the leases and contracts and commands the defendants to surrender possession of the lands mentioned in the bill of complaint and enjoins them against trespassing thereon or removing property therefrom is affirmed. That portion of the decree which directs that the defendants be credited with the cost price of the storage facilities for crude oil products at Pearl Harbor and the cost price of the fuel oil contents thereof and the actual expenditures of money in drilling and putting on production any wells drilled under the leases is reversed, and that this cause be, and hereby is remanded to the said District Court for further proceedings in accordance with the opinion of this Court. * * *'

"And whereas, * * * the said cause came on to be heard before the said Supreme Court: * * * It is now ordered, adjudged, and decreed by this court that the decree of the said United States Circuit Court of Appeals in this cause be, and the same is hereby, affirmed; and it is further ordered that this cause be, and the same is hereby, remanded to the District Court of the United States for the Southern District of California."

[1] There is no express order or direction in the mandate for the payment or allowance of any interest to any of the parties to the suit. Neither is this court prohibited by it from allowing interest herein. Its text leaves the question of interest open and unsettled. But it does require us to examine the opinion of the Circuit Court of Appeals and to proceed in accordance with such opinion, and the law is that in such cases the direction to proceed consistently with the opinions of the appellate courts has the effect of making such opinions a part of the mandate as though at length set out therein. See Gulf Refining Co. v. U. S., 269 U. S. 125, 135, 46 S. Ct. 52, 70 L. Ed. 195.

[2] Judge Gilbert, writing for the court in the course of the opinion of the Circuit Court of Appeals in this case, said:

"We are unable to affirm the court below in holding that the United States, in order to obtain the relief which it sought, is required to credit the defendants with the sums which they expended under the leases and contracts, and in holding applicable to the case the maxim that he who seeks equity must do equity."

And further on he stated:

"Here the plaintiff had a remedy at law, but resorted to equity to avoid a multiplicity of suits. It is well settled also that the maxim is not applicable in the case of a suit by the United States to vindicate its dominion over the public lands and to avail itself of substantial rights under statutory provisions."

And later in the opinion appears this language:

"But, in the present case, although the suit is in form a suit to cancel leases of the public domain, the United States is not seeking equity. It is but fulfilling its duty to protect the public domain and to compel compliance with fundamental laws of the United States. To do what the defendants here claim to be equity would be to require the court to exercise functions which belong to the legislative branch of the government, to legalize demands founded upon violations of the laws of the United States, and to make judicial disposition of the public resources of the United States.

"To hold in the present case that the defendants have equities which demand the protection of the court would be to ignore the fundamental distinction between cases brought to determine rights as between the United States and citizens depending upon contracts made under the authority of the laws of the United States and cases in which the contracts have been made without authority of law or in violation thereof."

And finally the opinion continues:

"Credit for moneys expended by the petroleum company in drilling and operating oil wells and making improvements on naval reserve No. 1 could be allowed only on the theory that said corporation committed innocent trespass upon the naval reserve and in good faith expended said money and made said improvements. The mala fides of the trespasses, however, follows from the findings of the court below. That such credits could lawfully be decreed only in a case where the trespass upon the lands was innocently made in good faith is well established."

And in the course of the opinion of the Supreme Court, which must also be considered in elucidation of the mandate, Mr. Justice Butler said:

"The petitioners stand as wrongdoers, and no equity arises in their favor to prevent granting the relief sought by the United States. They may not insist on payment of the cost to them or the value to the government of the improvements made or fuel oil furnished, as all were done without authority and as means to circumvent the law and wrongfully to obtain the leases in question. As Congress had not authorized them, it must be assumed that the United States did not want the improvements made or was not ready to bear the cost of making them. No storage of fuel oil at Pearl Harbor was authorized to be made in excess of the capacity of, or in any places other than, the facilities provided for that purpose pursuant to authorization by Congress. Whatever their usefulness or value, it is not for the courts to decide whether any of these things are needed or should be retained or used by the United States. Such questions are for the determination of Congress. It would be unjust to require the United States to account for them until Congress acts; and petitioners must abide its judgment in respect of the compensation, if any, to be made. And this applies to the claim on account of the fuel oil as well as to the other items. Clearly petitioners are in no better position than they would be if they had paid money to the United States, instead of putting the fuel oil in storage. Equity does not condition the relief here sought by the United States upon a return of the consideration."

The language of these excerpts from the opinions of the controlling authority to my mind constitutes nothing less than a direction to this court to grant the relief sought by the United States in its amended bill of complaint without condition or diminution and moreover are plain pronouncements that there were no equities of the defendant companies in this case that could be considered or contemplated by this court in limitation or restriction of the relief to which the United States was entitled under its amended bill of complaint.

It must follow then that plaintiff was entitled, in the decree of July 11, 1925, and is now entitled under the mandate of the Supreme Court, to such complete and plenary relief sought by the amended bill of complaint. The prayer of the amended bill was that this court grant a writ of injunction, temporary until final hearing and perpetual thereafter, restraining the defendants and

each of them from further drilling wells or operating under the two leases in controversy or performing further work of any sort thereunder; that a receiver be appointed to take possession and control of the lands within the naval oil reserve described in the bill and all property situate thereon and of all oil and gas thereon produced until the final termination of the cause; that defendants should be commanded to cease from further trespassing upon the lands described in the bill and to cease molesting plaintiff in the quiet enjoyment thereof; that the court should enter a decree canceling the contracts and leases in suit and holding them null and void and directing their surrender for such cancellation; and further that the court enter a decree that defendants and each of them be required to make full, just, true, and complete account for all oil and other minerals produced and converted to their or either of their use, and for any waste committed by either of them under the leases and agreements in controversy; and finally that a judgment be rendered against the defendants for the amount shown to be due by each of them to the United States of America by such accounting; and for such other and further relief as to the court shall seem meet in the premises.

[3, 4] There is no demand for interest in the amended complaint, but there are allegations of conversion of the property of plaintiff and a prayer that defendants make complete account for all property of plaintiff converted to their or either of their use and for any waste committed by them under color or cover of the disputed leases and agreements. It follows that, if entitled to the relief sought, the plaintiff would also be entitled to recover interest without the necessity of a specific demand therefor in its pleadings. See New Dunderberg Mining Co. v. Old et al. (C. C. A. 8) 97 F. 150. We are therefore brought to the question whether the relief sought by plaintiff in this suit, to which, it has been held by all of the courts, it is entitled fully and completely, requires the allowance of interest to the United States. Under the facts as found by this court and repeatedly affirmed in the higher tribunals, I believe that interest must be allowed to plaintiff as damages because of the wrongful and willful trespass by defendants upon the public lands of the United States and the unlawful conversion thereunder of its property by defendants herein. Pine River Logging Co. v. United States, 186 U. S. 279, 292, 22 S. Ct. 920, 46 L. Ed. 1164; Wooden-Ware Co. v.

United States, 106 U. S. 432, 1 S. Ct. 398, 27 L. Ed. 230; United States v. St. Anthony R. R. Co., 192 U. S. 524, 542, 24 S. Ct. 333, 48 L. Ed. 548; Chanslor-Canfield Midway Oil Co. v. United States (9 C. C. A.) 266 F. 145, 151.

[5] Interest is the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money or its value equivalent. Section 1915, California Civil Code. And every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt. Section 3287, California Civil Code.

The interest that is allowable in actions such as the one at bar is assessed as compensation to the aggrieved party that in contemplation of law he should be paid whenever a tort-feasor by wilful and wrongful trespass has converted property unlawfully and without right. In such cases the injured property owner is not only entitled to the recovery of the converted property or its value at the time of conversion, plus any profit that the converter may have made thereon, but the wrongdoer must also respond with interest thereon as additional damages.

It is contended by defendants that they were not converters of any property. I cannot agree with this contention, as in my judgment its premise is the allowance or at least the consideration of credits to the defendants on account of work done on the reserves or at Pearl Harbor, and the settled law of this case and the mandate which controls this court's action at this time forbids any consideration of such matters for any purpose whatsoever. It having been now finally decided that all transactions concerning the making and execution of the contracts and leases in suit commenced, continued, and terminated in fraud and in violation of law, the defendant companies are in no position now to erect as a barrier to the relief sought by plaintiff, which under the law includes interest, anything done by them under such agreements.

I conclude the discussion on this branch of the question by holding that plaintiff, under the issues of the pleadings and the decree of July 11, 1925, as affected by the mandate of the Supreme Court, is entitled to recover interest herein by way of damages.

[6] We approach the ultimate questions of

what rate of interest should be allowed, upon what amounts it should be applied, and over what period of time such interest should run, in the light of present conditions and circumstances of this case.

It seems to me proper that the established rate in California at the time of the conversion should be applied, as all property taken by defendants was situate within California at the time of the conversion. Under section 1917 of the California Civil Code and Act 3757 of the General Laws of California such legal rate of interest would be 7 per cent. per annum.

In the decree of July 11, 1925, as a result of mutual and reciprocal debits and credits between plaintiff and the two defendant companies, each of the parties was allowed interest on certain items in the statement of the account embodied in the decree. Such allowances of interest were not contested and were calculated upon the balances found due as the result of checking and stating the account between the parties. They were entered and allowed in the decree on the ruling of this court that defendants were entitled to credits upon their pecuniary obligations to the United States for the cost price of the Pearl Harbor project and the fuel oil deliveries thereto and the expense of drilling the oil wells on the reserve and putting and maintaining them on production. An entirely different situation now confronts us. We have no right to consider for any purpose or to any extent any of the expenditures of the defendants. We cannot now diminish or condition the relief sought by plaintiff in its amended bill of complaint. The Circuit Court of Appeals did not modify the decree of July 11, 1925. It partially reversed said decree and remanded this entire cause to this court for further proceedings herein in accordance with its opinion. The effect of the partial reversal of the decree of July 11, 1925, by the Circuit Court of Appeals, was to annul and cancel the entire structure of the statement of account in said decree, which of course necessarily included the interest allowed therein to all parties. The hypothesis for the allowance of interest in the July 11, 1925, decree is not now in the case. So that now the amount to be allowed as interest is open and undetermined, and it must be decided in the light of existing conditions as well as the law applicable thereto.

[7] When this suit was filed, March 17, 1924, plaintiff applied for and obtained the appointment of receivers who took charge of the property involved in the leases in suit, and it also applied for and obtained an injunction which restrained the petroleum company from possession, control, or operation upon the lands of the leases in controversy. Plaintiff could also have applied for an injunction pendente lite restraining the transport company from taking or receiving any further royalty oil from the naval oil reserves. It did not do so, but permitted, if it did not invite, the transport company to continue to receive royalty oils from the reserves thereafter and until·October, 1925. It seems to me that such conduct by plaintiff should operate to prevent it from collecting interest upon any pecuniary obligations of the transport company that arose and vested subsequent to March 17, 1924. The rule announced in section 3287 of the Civil Code of California is a reasonable and equitable rule to be applied to this case at this time. This act of the United States in refusing to take steps to prevent further taking, conversion, and waste by the transport company was tantamount to a waiver and relinquishment of its right to interest on any subsequently created additional obligation of the transport company.

In conclusion, I am of the opinion that plaintiff is entitled to recover interest from defendants, respectively, at the rate of 7 per cent. per annum to date of final decree to be now entered· herein on the value of the oil, gas, and other petroleum products that were extracted, produced, taken, received, or removed from the naval oil reserves by the defendant companies, respectively, under the pretended authority of the contracts and leases in suit at any time prior to March 17, 1924, and on any profit obtained by defendants therefrom to March 17, 1924, to be computed, in the case of the petroleum company on the total daily production of all oil, gas, and other petroleum products obtained by said petroleum company from all wells on the property in controversy herein, and in the case of the transport company on the monthly aggregate deliveries to said transport company of all oil, gas, and other petroleum products under color of the pretended contracts in suit.

Solicitors will submit final decree which will conform to the views herein expressed.

### Supplemental Opinion.

[8] Inasmuch as the decree of May 10, 1927, is silent as to interest from and after its date, and in view of the admitted reasons for delay until September 6, 1927, in satisfying the money award portion of said decree, I

am of the opinion that no interest subsequent to the date of the decree upon mandate, to wit, May 10, 1927, should be allowed plaintiff. In re Washington & Georgetown R. Co., 140 U. S. 91, 11 S. Ct. 673, 35 L. Ed. 339; Hagerman v. Moran, 75 F. 97 (C. C. A. 9); U. S. ex rel. Irrigation District v. U. S. District Court, 272 F. 611 (C. C. A. 9); Consolidated Rubber Tire Co. v. Diamond Tire Co. (D. C.) 232 F. 508, seem to uniformly establish beyond question that a federal court decree in equity ex propria vigore does not carry interest subsequent to its date. The defendants' motion to quash the two writs of execution issued herein on September 6, 1927, is granted, said writs are quashed, and the decree of May 10, 1927, is declared satisfied. An exception to this ruling is hereby noted and reserved for the plaintiff.