[L. A. No. 13760. In Bank.—September 29, 1933.]

LOS ANGELES CITY SCHOOL DISTRICT OF LOS ANGELES COUNTY et al., Petitioners, v. H. A. PAYNE, as County Auditor, etc., Respondent.

Erwin P. Werner and Ray L. Chesebro, City Attorneys, Frederick von Schrader, Assistant City Attorney, and Arthur Loveland, Deputy City Attorney, for Petitioners.

Everett W. Mattoon, County Counsel, and J. H. O'Conner, Assistant County Counsel, for Respondent.

PRESTON, J. This proceeding in mandate presents a single question: Are funds derived from the sale of school

bonds available for the construction of pedestrian traffic tunnels in streets not abutting school grounds?

Section 4.990 of the School Code, containing provisions substantially as later incorporated in section 4.960 (Stats. 1931, p. 718), provided that the governing board of a school district may call an election and submit to the electors of the district "the question whether the bonds of such district shall be issued and sold for the purpose of raising money for . . . The improving of school grounds . . . " Pursuant to this section the people within Los Angeles City School District, at an election called for March 27, 1931, regularly voted bonds for the improving of school grounds within the district, a portion of which contemplated improvement was to be the construction of a pedestrian tunnel under Soto Street, a heavily traveled traffic artery, for the use of children attending the Sheridan school, which is located one block east of said thoroughfare. After the bonds had been issued and sold and plans and specifications for the project were under way, respondent county auditor refused to allow a warrant for $100 to cover the partial cost of services performed and expense incurred in said matter by the city of Los Angeles. Said city, and the school district, thereupon filed herein their petition for writ of mandate to compel respondent county auditor to approve and allow said warrant.

The petition, urging that construction of the underpass is authorized as an "improving of school grounds" (sec. 4.960), makes a persuasive showing of great need for pedestrian tunnels for the safety of school children, due to the rapid growth of population and school attendance in said city and the enormous increase in swift motor traffic, particularly over main traffic arteries. Indeed, these facts are stipulated and also that such an underpass would best provide for the safety of the children and would tend, by reason of its proximity to said school, to make the school grounds accessible to the school children. It is further stipulated that no part of the site of the school is adjacent to or abuts upon said Soto Street or the exterior lines thereof and that the fee title to said street is vested in private persons, the city holding merely an easement for public highway purposes therein and at the site of the proposed tunnel.

Petitioner and respondent are also in accord upon the proposition that funds derived from the sale of school bonds need not to be expended in all cases for improvements located physically upon the land to be improved, as remoteness from or proximity to the school grounds is not the final test as to whether such work constitutes an improvement of the grounds. But it is respondent's position that these statements will not apply to a street improvement, which the proposed tunnel concededly is. In other words, respondent claims that the proximity or remoteness of a street improvement does furnish a determinative test as to the validity of expenditures for such purposes from bond funds for the "improving of school grounds"; that while bond funds may be used for abutting street improvements, funds for nonabutting street improvements must come from other sources. Petitioner, on the other hand, claims the street improvements can improve school grounds only by making them more accessible to the school children; that the term "improving of school grounds" cannot mean an improvement merely to enhance the market value of the real property but must necessarily mean an improvement for the benefit of the children themselves; hence it is immaterial whether the improvement be on an abutting or a nonabutting street, so long as it affords greater safety and protection to the children and makes the school more accessible to them.

Section 6.3 of the School Code as it stood prior to 1933 conferred upon school boards discretion to "grade, pave, sewer or otherwise improve streets . . . *in front of real property* owned or controlled by them" and to appropriate money to pay for such improvements, whether made by direct contract or pursuant to general laws of the state or the charter of the municipality. The word "improvement" has, at times, a broad meaning (*Meyer* v. *City Street Improvement Co.*, 164 Cal. 645 [130 Pac. 215]), and there would be no difficulty in construing the clause of section 4.960, "improving of school grounds", to include the improvement of abutting streets as authorized by the above section, thus making bond funds available for such purposes. It is clear, however, that any direct contract for the improvement of nonabutting streets would be in excess of the authority conferred by said section.

The next section of the School Code, section 6.4, permits school boards to appropriate money to pay *assessments* for the improving of streets, levied against school property included within an assessment district and provides: "Such assessments may be paid out of any funds belonging to the school district concerned, *except funds derived from the sale of bonds . . .* " This section also fails to confer upon school boards authority to improve nonabutting streets by direct contract; moreover, even if the construction of pedestrian tunnels were undertaken by the city and a special assessment were levied against the school district for payment thereof, still the bond funds would not be available for such purposes by reason of the language of the above-quoted exception.

Nor does the fact that section 6.4 mentions only assessment payments and section 6.3 refers to improvement of only abutting streets, without express provision for improvement of nonabutting streets by direct contract, confer upon school boards discretion to improve nonabutting streets under the aforesaid general provision of section 4.960, subdivision 6, as an "improving of school grounds". It is plain that sections 6.3 and 6.4 of the School Code, read in connection with section 4.960, confer upon school boards the full authority which they possess with respect to street improvements. These sections are both grants and limitations of power and they authorize payment for the improvement of nonabutting streets to be made only through assessment and from funds other than those derived from bond sales.

But, during the pendency of this proceeding, the legislature has spoken directly upon the subject, having, in 1933, amended said section 6.3 of the School Code to read: "6.3. Boards of school trustees and city boards of education shall have power to, and may in their discretion, grade, pave, sewer, or otherwise improve streets and other public places in front of real property owned or controlled by them, and also may construct in immediate proximity to any school of the district, pedestrian tunnels, sewers, and water pipes in any street when required for school purposes, and appropriate money from the building fund of the district to pay the cost and expenses of such improvements whether made by said boards, under contract executed by said boards, or under contracts made in pursuance of any of the general laws of the state

respecting street improvements, or other contracts made in pursuance of the charter of any municipality.'' (Amendment of 1933, in effect ninety days from and after May 22, 1933.)

The sole query now remaining is the interpretation of the phrase ''in immediate proximity to any school of the district''. Giving the words ''proximity'' and ''immediate'' their ordinary meaning, where position is involved, we can but say that ''adjoining'' or ''next in place'' is clearly meant. In immediate proximity to the school can be no farther away than the street upon which the school grounds abut. The amendment, therefore, but confirms the deduction we have made from the sections of the code as they existed prior thereto, from which it is clear that a pedestrian tunnel under a nonabutting street is not contemplated.

The writ is denied.

Curtis, J., Waste, C. J., Shenk, J., Seawell, J., and Thompson, J., concurred.

LANGDON, J., Dissenting.—I dissent. The conclusion reached in the opinion is most unfortunate. An unnecessarily narrow and legalistic analysis of terms is made, in contravention of the unmistakable and highly laudable purposes of the statute.

The opinion concedes that as the statute stood prior to 1933, remoteness or proximity to school grounds was not an absolute test, and that an improvement to school grounds might therefore be outside the actual grounds. This necessary concession answers its whole argument. The proposed construction makes the school grounds safer for children. If that is not an improvement, what is?

The statute of 1933, quoted in the opinion, seems designed to clarify this precise situation, and to give the school board the power to make improvements, including ''pedestrian tunnels'', regardless of whether they abut upon or adjoin the grounds. By use of the general words ''immediate proximity'' the legislature undoubtedly had in mind a rough check upon so-called improvements, which by reason of remoteness, could not be of material benefit to the grounds. Such terms as ''immediate proximity'', ''immediate neighborhood'', ''immediate vicinity'', and ''adjacent'', are elastic and indefinite. (See *United States* v. *St. Anthony R. R.*

*Co.*, 192 U. S. 524, 537 [24 Sup. Ct. 333, 48 L. Ed. 548]; *Lewis* v. *Gollner*, 129 N. Y. 227 [29 N. E. 81, 82, 26 Am. St. Rep. 516].) But these words have, in the opinion, been given a very clear and restricted meaning, and one which the legislature definitely did not declare. I think that the objects of the statute call for a more liberal interpretation of its language.

Rehearing denied.

Langdon, J., and Thompson, J., dissented.