## HAMMOND v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. October 25, 1917.)

No. 2503.

1. PUBLIC LANDS ☞13—CUTTING TIMBER—QUESTIONS FOR JURY—TRUTH OF TESTIMONY.

Where there were circumstances and matters of fact testified to which, if true, tended to show that cutting of timber from public land was done by defendant or under his direction, whether the testimony was true was a matter for the jury to determine.

2. PUBLIC LANDS ☞13—CUTTING TIMBER—DIRECTION OF VERDICT.

Act March 3, 1891, c. 561, § 8, 26 Stat. 1099, as amended by Act March 3, 1891, c. 559, 26 Stat. 1093 (Comp. St. 1916, § 4992), provides that in certain states, in any civil action for trespass on public timber lands or to recover timber or lumber cut therefrom, it shall be a defense that it was cut or removed by a resident of the state for agricultural, mining, manufacturing, or domestic purposes, and has not been transported out of the state; the amendatory act requiring that the cutting be under rules prescribed by the Secretary of the Interior. Act June 3, 1878, c. 150, 20 Stat. 88 (Comp. St. 1916, §§ 4989–4991), authorizes bona fide residents of certain states to cut and remove timber from public lands, such lands being mineral and not subject to entry, except mineral entry, subject to rules and regulations prescribed by the Secretary of the Interior. *Held* that, where defendant, charged with cutting timber from public land, introduced evidence tending to show that the lands were mineral lands, and that the party doing the cutting had complied with the rules established by the Secretary of the Interior, and sought a verdict in his favor on the ground that the cutting was authorized under the act of 1878, the court did not err in refusing to direct a verdict on the ground that the cutting was justified under the acts of 1891 which relate to timber lands, and not to mineral lands, especially where there was testimony tending to show trespasses subsequent to March 3, 1891.

3. APPEAL AND ERROR ☞273(5)—RESERVATION OF GROUNDS OF REVIEW—NECESSITY OF SPECIFIC EXCEPTION.

To entitle an appellant to call in question instructions given by the trial court, the exceptions thereto must be sufficiently specific to direct the court's attention to the particular errors complained of, to the end that the court may correct the error, should one be found to exist, before the retirement of the jury.

4. APPEAL AND ERROR ☞274(5)—RESERVATION OF GROUNDS OF REVIEW—SUFFICIENCY OF EXCEPTION.

In an action for the value of timber cut from public land, the court charged that, if defendant knowingly and willfully cut and converted the timber, plaintiff was entitled to the market value of the timber at the time of its disposal or sale, that if defendant acted under the honest, but mistaken, belief that he had a right to cut the timber, then in assessing the damages the jury would fix the value at the time of conversion less the amount added to its value before sale, or, in other words, if there was added certain value by reason of manufacturing the timber into lumber, then the measure of damages would be the difference between the expenses incurred in manufacture and the selling price, and that in fixing the amount of the verdict the jury should include interest on the value of the lumber from the date of conversion. Defendant excepted "to the measure suggested by the court," adding that defendant claimed that the only measure was the value of the stumpage in the tree, and that the instructions added another element to this value, and also excepted to the instructions "with regard to interest." *Held*, that the exception was dis-

tinctly based on the contention that the only measure of damages was the value of the stumpage, and that the court was in error in instructing that the jury were authorized to award anything above this amount and in instructing them to add interest.

5. PUBLIC LANDS ⬅️13—CUTTING TIMBER—MEASURE OF DAMAGES.

Where a person, without any intention to violate any law or do any wrongful act, cuts and removes timber from public lands in the honest, though mistaken, belief that he has the right to do so, the measure of damages is the value of the timber after it was cut at the place where it was cut, and not the difference between the expenses incurred in manufacturing it into lumber and the price for which the lumber was sold, which would include all profits on the lumber.

6. DAMAGES ⬅️208(9)—INTEREST—DISCRETION OF JURY.

In an action for the value of timber cut from public land in Montana, where under the existing statutes no interest was recoverable in actions for conversion, whether interest should be included in the damages was in the discretion of the jury, and the court erred in directing the jury as a matter of law to allow interest, especially where the government waited 17 years before bringing suit.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by the United States against A. B. Hammond. Judgment for plaintiff (226 Fed. 849), and defendant brings error. Reversed and remanded.

This action was brought by the United States to recover the value of certain timber alleged to have been cut and removed from certain specifically described public lands of the United States situate in the state of Montana—the complaint as amended alleging that from time to time during the year 1885 down to and including the year 1894 the defendant to the action (plaintiff in error here), acting as the general manager of certain corporations of the state, known, respectively, as the Montana Improvement Company, Limited, Blackfoot Milling & Manufacturing Company, Missoula Mercantile Company, and Big Blackfoot Milling Company, without any right so to do, entered upon the said lands and cut and caused to be cut down certain of the timber then standing thereon, and to be removed and manufactured into 21,185,-410 feet, board measure, of lumber, and converted and caused to be converted to his own use and that of the said corporations the whole thereof, all the time well knowing that the said timber and lumber was the property of the government, and that neither he nor the said corporations had any right whatever to any thereof. The complaint alleged that the value of the timber while standing was $1 per thousand feet, board measure, $5 per thousand feet, like measure, after being felled and prepared for sawing into lumber, and $10 per thousand feet, board measure, after being manufactured into lumber; and alleging that the corporations named ceased to exist subsequent to the commission of the acts complained of, and that the said acts were directed by the defendant to the action, the plaintiff prayed judgment against him for $211,-854.10, being at the rate of $10 a foot for the lumber alleged to have been so manufactured from the timber alleged to have been so cut and removed from the plaintiff's lands.

There having been a verdict in favor of the plaintiff for $51,040, and judgment accordingly against the defendant for that sum, with costs taxed at $1,-617.49, the latter has brought the case here by writ of error; the chief points made in his behalf being that the evidence in the case wholly failed to sustain the material allegations of the complaint (all of which were put in issue by the answer of the defendant), and therefore that the court below erred in

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

refusing his motion for a directed verdict in his favor, and, further, that error was committed by the trial court in the matter of the measure of damages properly applicable to the case, including the question of interest.

Charles S. Wheeler and W. S. Burnett, both of San Francisco, Cal., for plaintiff in error.

John W. Preston, U. S. Atty., and Frank Hall, Sp. Asst. to Atty. Gen., both of San Francisco, Cal.

E. S. Pillsbury and Oscar Sutro, both of San Francisco, Cal., amici curiæ.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

ROSS, Circuit Judge (after stating the facts as above). The object of the government's attorney in alleging in the complaint the value of the timber while standing, as well as its value after being felled and prepared for sawing, and after being made into lumber, obviously was to enable the plaintiff to recover the amount of damages the law fixes as the proper measure, in view of the facts of the case and in the event the evidence should establish its right to recover from the defendant at all, which measure, it is well settled, depends upon whether the wrong alleged was willfully or innocently committed, the condition of the property at the time of the alleged conversion, and the then status of the defendant to the action. Woodenware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230; Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164; United States v. St. Anthony R. R. Co., 192 U. S. 524, 24 Sup. Ct. 333, 48 L. Ed. 548.

The evidence shows that a portion of the public lands from which the timber in question was cut is situate along the Hell Gate river and the other portion along the Blackfoot river; the one portion being more than 20 miles from the other. It is not contended that either the Blackfoot Milling & Manufacturing Company or the Big Blackfoot Milling Company had anything to do with the cutting of any of the timber upon any of the government lands situate along the Hell Gate river; but it is claimed in behalf of the government that the defendant to the action caused it to be cut through his control of the Montana Improvement Company and the Missoula Mercantile Company; and *that* he strenuously denies.

The former corporation was the successor in interest of a partnership called E. L. Bonner & Co., composed of the defendant Hammond, E. L. Bonner, J. H. Robertson, and R. A. Eddy, and the Missoula Mercantile Company was the successor in interest of a partnership called Eddy, Hammond & Co., composed of the defendant Hammond, R. A. Eddy, and E. L. Bonner. The latter firm was formed in 1876, and engaged in a general merchandise business in the then small town of Missoula. The firm of E. L. Bonner & Co. was a contracting one, to which the Northern Pacific Railroad Company gave a contract to clear 250 miles of its right of way in Montana when engaged in building its road through that state; the firm being appointed agent of the road to enter upon the public lands and there cut the ties, piling, and timber

necessary for the construction of the road, including its bridges, stations, etc. When the road was completed in 1882 the Montana Improvement Company was organized, 51 per cent. of the stock of which was taken by the railroad company; the remainder being taken by various persons, including the members of the firm of E. L. Bonner & Co. (the defendant Hammond taking one-fifteenth of such stock), pursuant to a contract made between the respective parties, and pursuant to which contract Bonner & Co. transferred to the improvement company all of the mills which the firm had used in supplying the railroad company with timber and lumber in the construction of its road, together with the surplus lumber that the firm had accumulated in the prosecution of that work; and the improvement company also acquired by the contract the right to cut timber upon all of the lands of the Northern Pacific Company within the state of Montana.

It appears from the record in the case, as well as from litigation that subsequently arose between the government on the one side and the Northern Pacific Railroad Company and the Montana Improvement Company on the other, that the organizers of the latter company supposed that by the contract mentioned the company acquired the right, not only to cut timber from the lands of the railroad company, but also had by virtue of the act of Congress of June 3, 1878, entitled "An act authorizing the citizens of Colorado, Nevada, and the territories to fell and remove timber on the public domain for mining and domestic purposes" (20 Stat. 88), the right to cut like timber, not only from the mineral lands of the United States, but also on the other lands of the government lying in close proximity thereto and having the general character of mineral lands. Accordingly in the year 1883 it undertook the construction of a dam in the Blackfoot river, with a view of building a mill there for sawing the lumber from the timber it contemplated cutting from all of those lands. The mill was built, and when the company commenced cutting the timber it soon found the government questioning the rights asserted by the railroad company as well as itself (United States v. N. P. R. R. Co., 140 U. S. 703, 11 Sup. Ct. 1030, 35 L. Ed. 593; Id., 6 Mont. 361, 12 Pac. 769), and concluded to wind up and liquidate its affairs. Among its properties was the sawmill so built, which mill it sold in the fall of 1885 to F. A. Hammond, a brother of the defendant to this action, agreeing to move and install it for the purchaser in Hell Gate Canyon, which it did, and F. A. Hammond then proceeded to operate the mill in the sawing, among other timber, of such as he cut from the government lands along the Hell Gate river, until the sale by him within a few months, to wit, in May, 1886, of all of his interest to George W. Fenwick, who was a brother-in-law of the Hammonds. From the time of such sale Fenwick operated the mill in the sawing, among other timber, of such as he also cut from those government lands.

In 1885 the Missoula Mercantile Company was incorporated, of whose stock the defendant, A. B. Hammond, acquired and thereafter held one-third, and of which company he was a director. His testimony is positive to the effect that he never, either directly or indirectly, had any interest in the mill, business, or property of either F. A. Hammond or of Fenwick in the Hell Gate region, or participated in

any of its profits, or gave any directions with respect thereto; and such also is the testimony of Fenwick. And the defendant also testified that the Missoula Mercantile Company had no interest in any of the property or business of Fenwick, or in the profits thereof, although it is admitted that he received his supplies from the Mercantile Company, being one of its customers, and that he also had an office in its store building. At the time of the alleged cuttings of timber on the public lands along the Hell Gate river those lands were unsurveyed. Not so, however, as respects those situate along the Blackfoot. They had been surveyed; the odd sections cut over being owned by the Northern Pacific Railroad Company, and the even sections by the United States.

Henry Hammond, another brother of the defendant, had, in July 1885, acquired from the Montana Improvement Company the dam and dam site on the Blackfoot river (or what remained of the dam after a flood which destroyed it in part), and he proceeded to build a saw-mill there, known as the Bonner mill, which mill he proceeded to operate for the sawing of timber cut by him on lands situate along the Blackfoot river, until, in 1888, he conveyed all of his interest to the Blackfoot Milling & Manufacturing Company, receiving for such interest one-fourth of the stock of that corporation; the defendant, A. B. Hammond, owning one-fifth of such stock. One of the conditions of such conveyance was that Henry Hammond should continue to operate the mill under lease from the Blackfoot Milling & Manufacturing Company for a certain term, with the privilege of an extension, which, in his testimony, he claims to have done; the books being kept at Missoula. During the year 1891 the Big Blackfoot Milling Company acquired the property and business interests of the Blackfoot Milling & Manufacturing Company; Henry Hammond becoming its president and manager and the owner of one-fourth of its stock. He so remained until about the close of 1895, when all of the property was sold by the Big Blackfoot Milling Company to a third party—the Anaconda Company.

The testimony of Henry Hammond is positive to the effect that, during all of the time he was operating both individually and as lessee, the defendant, A. B. Hammond, had no interest, directly or indirectly, in any of the property or the profits thereof, and that, during the time of the ownership of the property by the Big Blackfoot Milling Company and its operation under the presidency and management of the witness, the defendant, A. B. Hammond, had no interest, directly or indirectly, in his quarter or in the profits thereof. It is not disputed that during the aforesaid operations of Henry Hammond some timber was cut upon some of the public lands along the Blackfoot river that are described in the complaint; but it is insisted that the evidence shows that the defendant, A. B. Hammond, not only had nothing to do with such cutting, but that such of the timber as was cut upon the public lands by Henry Hammond, individually and as president and manager of the Big Blackfoot Milling Company, was cut through inadvertence and not intentionally.

[1] It is hardly necessary to say that all of the material questions of fact as to which there was substantially conflicting evidence were for the exclusive determination of the jury. And while it is very

earnestly insisted on behalf of the appellant that there was no substantial testimony tending to show that any of the cutting of timber upon the lands of the United States for which the action was brought was done by or under his direction, and that, therefore, he was entitled to a directed verdict in his favor, we cannot, after a very attentive examination of the record, so hold. These are circumstances, as well as matters of fact testified to, which, if true (and that of course was for the jury to determine), tended to support the contention of the government, and to sustain the verdict of the jury finding the defendant liable for the unlawful trespasses and conversions. It would serve no useful purpose to specify them, and therefore we pass to the remaining questions—the measure of damages as declared in the instructions of the court, the question of interest, and the contention on behalf of the plaintiff in error that a statute passed by Congress March 3, 1891, constitutes a complete defense to the action, and that the court should have so instructed the jury.

The instruction which is the basis of the latter contention, and which was requested and refused, is in these words:

"I instruct you that the evidence offered in this case is not sufficient to justify the rendition of a verdict against the defendant in this action, and therefore I direct you that you return a verdict in favor of the defendant."

The law relied upon by the plaintiff in error in support of the contention is found in section 8 of the first of the two acts passed March 3, 1891 (26 Stat. 1099), which, so far as pertinent to the case, is as follows:

"In the states of Colorado, Montana, Idaho, North Dakota and South Dakota, Wyoming, and in the district of Alaska and the gold and silver regions of Nevada, and the territory of Utah, in any criminal prosecution or civil action by the United States for a trespass on such public timber lands or to recover timber or lumber cut thereon, it shall be a defense if the defendant shall show that the said timber was so cut or removed from the timber lands for use in such state or territory by a resident thereof for agricultural, mining, manufacturing, or domestic purposes, and has not been transported out of the same."

The title of that act is:

"An act to repeal timber-culture laws and for other purposes."

By a second act passed the same day (26 Stat. 1093) and entitled "An act to amend section eight of an act approved March third, eighteen hundred and ninety-one, entitled 'An act to repeal timber culture laws and for other purposes,'" Congress so amended the said provision of section 8 as to read:

"In the states of Colorado, Montana, Idaho, North Dakota, and South Dakota, Wyoming, and in the district of Alaska, and the gold and silver regions of Nevada and the territory of Utah in any criminal prosecution or civil action by the United States for a trespass on such public timber lands or to recover timber or lumber cut thereon it shall be a defense if the defendant shall show that the said timber was so cut or removed from the timber lands for use in such state or territory by a resident thereof for agricultural, mining, manufacturing, or domestic purposes under rules and regulations made and prescribed by the Secretary of the Interior and has not been transported out of the same, * * * but this act shall not operate to repeal the act of

June third, eighteen hundred and seventy-eight, providing for the cutting of timber on mineral lands." Comp. St. 1916, § 4992.

It will be readily seen that by the first of those two acts it is made a defense if the defendant shows that the timber was cut or removed for use in the state or territory where the lands are situated, by a resident thereof, for agricultural, mining, manufacturing, or domestic purposes, and, has not been transported out of the same; and by the second of the acts it is made a defense if the defendant shows that the timber was cut or removed for use in the state or territory where the lands are situated, by a resident thereof, for agricultual, mining, manufacturing, or domestic purposes, under rules and regulations made and prescribed by the Secretary of the Interior, and has not been transported out of the same.

The defendant pleaded in his answer that the timber which was cut and removed from the public lands along the Hell Gate river was so cut and removed under and by virtue of the permission granted in and by the act of Congress of June 3, 1878 (1 Supp. to R. S. 1874–1891, p. 166, 20 Stat. 88 [Comp. St. 1916, § 4989]), which provided, among other things:

"That all citizens of the United States and other persons, bona fide residents of the state of Colorado, or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which such citizens or persons may be at the time bona fide residents, subject to such rules and regulations as the Secretary of the Interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: Provided, the provisions of this act shall not extend to railroad corporations."

[2] As will be seen, the public lands from which timber was permitted to be cut by the act just quoted from were mineral lands; and upon the trial of the case the defendant introduced evidence tending to show that the lands situated along the Hell Gate river were mineral lands within the meaning of that act, and that Fenwick had complied with its provisions and with the rules established thereunder by the Secretary of the Interior. Having done so, and thus claimed from the jury a verdict in his favor in so far as those lands were concerned, on the ground that the act of June 3, 1878, authorized the cutting complained of, we think it manifest that the trial court did not err in refusing to direct a verdict for the defendant because of section 8 of the acts of March 3, 1891, supra, for both of those acts related, not to mineral, but to timber, lands; the second and supplemental one expressly declaring that it should "not operate to repeal the act of June 3, 1878, providing for the cutting of timber on mineral lands." Moreover, while the first of the acts passed March 3, 1891, was clearly a bar to the action for such of the timber as was shown to have been theretofore cut by or under the directions of the defendant from the timber lands of the government for use in Montana for agricultural, mining, manufacturing, or domestic purposes, and that had not been

transported out of the same, the court could not with propriety have given the instruction requested; there being testimony given tending to show such trespasses on the lands of the plaintiff subsequent to March 3, 1891.

Upon the question of the measure of damages, the instruction to the jury was as follows:

"If, under the principles I have stated, you find that the defendant, or any of the corporations named acting under his direction and control, knowingly and willfully cut and converted the timber mentioned in the complaint, or any part thereof, then the plaintiff is entitled to recover the market value of the timber so converted, in whatever condition or form it may have been at the time of its disposal or sale.

"If you find that the defendant, or any of the said corporations while acting under his direction and control, converted the timber mentioned in the complaint, or any part thereof, under the honest, but mistaken, belief that he or they had the right under the law to cut and remove such timber, then in assessing the damages you will fix the value of the same at the time of conversion less the amount which was added to its value before sale; in other words, if you find that timber was so cut and removed from lands of complainant, and that there was added thereto certain value by reason of the manufacturing of said timber into lumber for the market, then the measure of damages will be the difference between the expenses incurred in the manufacture of said lumber and the price for which it was sold in the market.

"In fixing the amount of any verdict you may find for the plaintiff, you should include interest on the value of any lumber so converted from the date of such conversion to the present time."

To that instruction the counsel for the defendant excepted in these words:

"Next, as to the measure of damages: We except as to the measure suggested by the court. We claim that the only measure that can exist under the circumstances is the value of the stumpage in the tree, and I think your honor's instructions add to it another element.

"I also except to your honor's instructions with regard to interest."

[3] It is insisted on behalf of the government that the exceptions were not sufficiently specific; and it was so held by the trial court in denying the motion that was made by the defendant for a new trial. The rule is established by decisions almost innumerable that, to entitle an appellant to call in question instructions given by a trial court to the jury, the exception or exceptions taken thereto must be sufficiently specific to direct the attention of the court to the particular error or errors complained of, to the end that the court may correct the error, should one be found to exist, before the retirement of the jury. One of the cases in the Supreme Court upon the subject is that of McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162, where the trial court gave this instruction upon the question of damages, to which a general exception was taken:

"The jury are instructed that, if they find a verdict for the plaintiff, they should render a verdict in his favor for such a sum (not exceeding the amount claimed in the declaration) as in their judgment will reasonably compensate him for the pain resulting from the injury and from the loss of his leg; for the inconvenience to which he has been put, and which he will be likely to be put, during the remainder of his life, in consequence of the loss of his leg; for the mental suffering, past and future, which the jury may find to be the natural and necessary consequence of the loss of his leg; and for such pecuniary loss, as the direct result of the injury, which the jury

may find from the evidence that he is reasonably likely to sustain hereafter in consequence of his being deprived of one of his legs."

The Supreme Court said:

"The court's attention was not called to any particular in which this charge, which covers a number of elements of damages, was alleged to be wrong; only a general exception was taken to the charge as given in this respect. It has been too frequently held to require the extended citation of cases that an exception of this general character will not cover specific objections, which in fairness to the court ought to have been called to its attention, in order that, if necessary, it could correct or modify them. A number of the rules of damages laid down in this charge were unquestionably correct, to which no objection has been or could be successfully made. In such cases it is the duty of the objecting party to point out specifically the part of the instructions regarded as erroneous. Baltimore & P. R. Co. v. Mackey, 157 U. S. 72, 86, 15 Sup. Ct. Rep. 491, 39 L. Ed. 624, 629.

"It is now objected that to permit a recovery for a pecuniary loss, as covered in the instructions, would allow the infant plaintiff to recover compensation for his time before as well as after he has reached his majority, and that during infancy his father is entitled to recover any wages he might earn. If the defendant wished the charge modified in this respect, he should have called the attention of the court directly to this feature. The charge in this respect was general, permitting a recovery for a pecuniary loss directly resulting from the injury. It would be very unfair to the trial court to keep such an objection in abeyance, and urge it for the first time in an appellate tribunal.

"Furthermore, an objection is taken to the charge as to mental suffering, past and future. It is objected that this instruction permits a recovery for future humiliation and embarrassment of mind and feelings because of the loss of the leg. But we find no objection to the charge as given in this respect. The court said: 'The jury are to consider mental suffering, past and future, found to be the necessary consequence of the loss of his leg.' Where such mental suffering is a direct and necessary consequence of the physical injury, we think the jury may consider it. It is not unlikely that the court might have given more ample instruction in this respect, had it been requested so to do. But what was said limited the compensation to the direct consequences of the physical injury."

The case of United States v. United States Fidelity & G. Co., 236 U. S. 512, 35 Sup. Ct. 298, 59 L. Ed. 696, cited by the attorney for the appellee, was a suit upon a bond, tried without a jury, in which the government claimed to be entitled to recover as against the Guaranty Company, in addition to the penal sum mentioned in the bond, interest thereon from the date of the principal's default, or at least from the time when it was said the surety was notified of the default. The court said:

"The only exception taken in the trial court to furnish support for the present contention was: 'To the failure of said court to * * * decide that plaintiff is entitled to interest on the sum of $6,500 from the 1st day of September, 1905, and to the failure of the court to enter judgment against the defendant for such interest.' We do not think this is sufficient to attribute error to the trial court as for overruling a claim for interest on the penalty of the bond from the time of demand made upon the surety, or notice to it of the principal's default. No such point was raised. The claim that was made and overruled was for interest from the time of the default, irrespective of notice to the surety; and that presents a very different question of law.

"The primary and essential function of an exception is to direct the mind of the trial judge to a single and precise point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may

thus be obviated. An exception, therefore, furnishes no basis for reversal upon any ground other than the one specifically called to the attention of the trial court"—citing cases.

See, also, the very recent decision of this court in Sam Yick v. United States, 240 Fed. 60, 65, —— C. C. A. ——.

[4] In the present case the exception of the defendant to the charge of the court as to the measure of damages and as to the right of the plaintiff to interest on any amount the jury might find the plaintiff entitled to was distinctly based upon the contention of the defendant that the only measure of damages that could exist under the case as presented was the value of the stumpage in the tree, and that the court was in error in instructing the jury that they were authorized to award the plaintiff anything above that amount, and in instructing them to add interest to any amount to which the plaintiff might be found entitled. That, in our opinion, is the obvious meaning of the language of the exceptions, and the only meaning to which it is fairly entitled.

It remains, therefore, to consider whether the instructions given upon those subjects were erroneous. In the brief of the counsel for the government it is said that it is "difficult to determine what rule of damages will apply in cases of innocent conversion," and that the proper measure to be applied in such cases declared by the Supreme Court in the case of United States v. St. Anthony R. R. Co., 192 U. S. 524, 24 Sup. Ct. 333, 48 L. Ed. 1164, "is wholly inconsistent with the rule adopted by the court in Woodenware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, and likewise the language of the Court in Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164," but that in those cases "there is no expressed intention to overrule" the Woodenware Case.

[5] While the latter statement is quite true, the court in the St. Anthony Case did distinctly adjudge that any one who, without any intention to violate any law or to do any wrongful act, cuts and removes timber from the lands of the government in the honest, although mistaken, belief that he has the right to do so, is liable only for the "value of the timber after it was cut at the place where it was cut"—expressly distinguishing such a case from the Cases of the Woodenware Company and the Pine River Logging Company, and expressly declaring that "in both of those cases the parties doing the cutting did it willfully and in bad faith." 192 U. S. 524, 543, 24 Sup. Ct. 339, 48 L. Ed. 548. See, also, decisions of this court in United States v. Coughanour, 133 Fed. 224, 66 C. C. A. 278; United States v. Van Winkle, 113 Fed. 903, 51 C. C. A. 533; United States v. Teller, 106 Fed. 447, 45 C. C. A. 416; United States v. N. P. R. R. Co. (C. C.) 67 Fed. 890; United States v. Eccles (C. C.) 111 Fed. 491.

Such being the law, we can but regard as clearly erroneous the instruction of the court below to the jury that, although they should find "that the defendant, or any of the said corporations while acting under his direction and control, converted the timber mentioned in the complaint, or any part thereof, under the honest, but mistaken, belief that he or they had the right under the law to cut and remove such timber" they should, in the event of a verdict for the plaintiff,

246 F.—4

fix the value of the same at the difference between the expenses incurred in its manufacture and the price for which the lumber was sold—which, of course, included in the plaintiff's damages all of the profits derived by the defendant.

The verdict of the jury being for the lump sum of $51,040, it is manifestly impossible for the court to know the different elements entering into their calculation. For the appellant it is contended that:

They placed the stumpage value at $1 per thousand feet.

| | |
|---|---:|
| 16,000,000 feet at $1 per thousand | $16,000.00 |
| They took $1 per thousand feet as profit | 16,000.00 |
| They allowed interest from 1895 to 1912—17 years at 7 per cent.—equal to 119 per cent. on the stumpage value | 19,040.00 |
| Making a total of | $51,040.00 |

On the contrary, it is insisted on behalf of the government, and we think rightly, that the record furnishes no sufficient basis for that contention, and that the result arrived at by counsel is purely speculative. But that the jury *may* have reasoned in the same way clearly shows the harm that may have resulted to the defendant from the erroneous instruction given respecting the measure of damages.

[6] In the case of United States v. St. Anthony R. R. Co., supra, the Supreme Court, in directing the entry of judgment in favor of the government for the value of the timber after it was and at the place it was cut, allowed the government no interest on the amount for which judgment was directed; and that judgment of the Supreme Court is strongly relied upon by the appellant here as showing error on the part of the court below in directing the jury to include interest from the time of conversion to the time of the verdict. But the most that can be claimed by the appellant for that case as regards interest is the silence of the court; for the question does not appear to have been suggested or considered.

In the case of White et al. v. United States, however, decided by the Circuit Court of Appeals for the Fifth Circuit (202 Fed. 501, 121 C. C. A. 33), where the intestate of the plaintiffs in error was a willful trespasser upon lands of the government, and cut timber thereon which was manufactured into lumber, and for which the government was given a verdict and judgment for the full value of the lumber at the time of its conversion, with interest from the date of conversion to the date of the trial of the action—a period of 13 years—the court held that the recovery of the plaintiff should have been without interest, saying:

"Interest in actions of tort in the federal courts is not allowable as a matter of right; but its allowance, as part of plaintiff's damages, is discretionary with the jury. Eddy v. Lafayette, 163 U. S. 448–467 [16 Sup. Ct. 1082, 41 L. Ed. 225]. The jury were not instructed by the court below that they possessed any such discretion, and probably included interest in their verdict upon the idea that the plaintiff was entitled to it as matter of right, and not of discretion. It is true the plaintiffs in error do not assign error because of this omission of the court, but a plain error may be noticed by us, in the absence of any assignment. In view of the long and unexplained delay on the part of the government in instituting the suit, we feel that a proper exercise of discretion by the jury would have denied the plaintiff interest."

Counsel for the government say that the case of Eddy v. Lafayette, 163 U. S. 456, 16 Sup. Ct. 1082, 41 L. Ed. 225, where the Supreme Court declared that "undoubtedly the rule, in cases of tort, is to leave the question of interest as damages to the discretion of the jury," is distinguishable from the present one for the reason that there was in that case "nothing showing that the railroad company had benefited by its tort, while in the case of conversion of personal property interest is allowed upon the theory that the estate of the tort-feasor has been enriched, and that between the time of conversion and the rendition of judgment he has had the use and benefit of the property converted."

We agree that the case of Eddy v. Lafayette is distinguishable from the present one in the respect stated by the counsel for the government; still the Circuit Court of Appeals for the Fifth Circuit in White et al. v. United States—a case precisely similar to the present one—did distinctly hold, not only that it is a matter for the discretion of the jury whether or not interest should be allowed on the amount of damages found, but that the exercise of a proper discretion would deny such interest where, as there, there was an unexplained delay of 13 years on the part of the government in instituting the suit. In the present case there was a delay of about 17 years.

At common law:

"In actions for conversion, the measure of damages is ordinarily the value of the goods. * * * Interest may be allowed in addition to the value of the goods at the time of conversion if the jury think fit." Halsbury's Laws of England, vol. 10, pp. 344, 345.

In Lincoln v. Claflin, 7 Wall. (74 U. S.) 132, 19 L. Ed. 106, which was an action for the fraudulent obtaining and conversion of the property of the plaintiffs, the Supreme Court said:

"It is possible that the court erred in its charge upon the subject of damages in directing the jury to add interest to the value of the goods. Interest is not allowable as a matter of law, except in cases of contract, or the unlawful detention of money. In cases of tort its allowance as damages rests in the discretion of the jury."

And in United States v. Sanborn, 135 U. S. 271, 10 Sup. Ct. 812, 34 L. Ed. 112, where the government, after a delay of more than 10 years sued to recover back money paid to the defendant, the same court said:

"More than ten years elapsed after the payment to Sanborn before his right to retain the money was questioned by suit or otherwise. When the facts, disclosed by the evidence, were first discovered by the officers of the government whose duty it was to institute legal proceedings against the defendant, does not appear. It is entirely consistent with the record that the long delay which occurred is without excuse. In Redfield v. Ystalyfera Iron Co., 110 U. S. 174 [3 Sup. Ct. 570, 28 L. Ed. 109], the question was whether the plaintiff was entitled under the circumstances of that case, to recover interest, the action being against a collector, to recover damages for an illegal exaction of customs dues. The court, after observing that interest is recoverable as of right, when reserved expressly in the contract, or when implied by the nature of the promise, said: 'But where interest is recoverable not as a part of the contract, but by way of damages, if the plaintiff has been guilty of laches in unreasonably delaying the prosecution of his claim, it may be properly with-

held.' We think that the same rule should be applied against the government when, in a case like the present one, it has long delayed an assertion of its rights, without showing some reason or excuse for the delay, especially when it does not appear that the defendant has earned interest upon the money improperly received by him."

In District of Columbia v. Robinson, 180 U. S. 93, 21 Sup. Ct. 283, 45 L. Ed. 440, which was an action against the government for alleged trespasses upon the plaintiff's land, and digging and carrying away certain gravel, the trial court at the request of the plaintiff gave this instruction:

"If the issues joined upon both of the defendant's pleas, which issues are submitted to the jury, are found by them in favor of the plaintiffs, then they are instructed that they may assess such damages in favor of the plaintiffs as they believe from the evidence would make the plaintiffs whole, and may [include] enhance the damages by any sum not greater than the interest on the amount from August 28, 1882, when this action was brought, to the time of this trial [as part of the plaintiffs' damages], if the jury [see fit to include such interest as damages, and may consider the time during which the plaintiffs and their testator were kept out of their money between those dates] shall find from the evidence that such allowance would be reasonable and just."

The Supreme Court, in passing upon the objection to the instruction, said:

"The objection is to the interest. It is not claimed that in cases of tort interest may not be allowed in the discretion of the jury. It is asserted that under the circumstances of the case the court should not have submitted the claim of interest to the jury. But it was the plaintiffs' right to have invoked the exercise of the discretion of the jury, and the circumstances of the case were to be considered by it in exercising such discretion, and presumably were considered."

In the comparatively recent case of Drumm-Flato Commission Co. v. Edmisson, 208 U. S. 534, 28 Sup. Ct. 367, 52 L. Ed. 606, which was an action for the conversion of certain cattle in the then territory of Oklahoma, the statute of which territory provided that "the detriment caused by the wrongful conversion of personal property is presumed to be, first, the value of the property at the time of the conversion, with interest from that time," the Supreme Court said:

"It may be that in the absence of statute the general rule is that in actions for tort the allowance of interest is not an absolute right (Lincoln v. Claflin, 7 Wall. 132 [19 L. Ed. 106]; The Scotland, 118 U. S. 507 [6 Sup. Ct. 1174, 30 L. Ed. 153]; District of Columbia v. Robinson, 180 U. S. 92 [21 Sup. Ct. 283, 45 L. Ed. 440]; Frazer v. Bigelow Carpet Co., 141 Mass. 126 [4 N. E. 620]), but the Oklahoma statute has made interest a part of the detriment caused by the conversion of personal property. Other states have done the same."

In the present case it is undisputed that under the Montana statutes existing during the time of the conversions complained of no interest was recoverable. It results from what has been said that the court below erred in directing the jury as matter of law to allow interest on the value of the property. We are of the opinion that that question should have been left to the discretion of the jury, to be determined by them in view of all the facts and circumstances of the case.

The judgment is reversed, and the case remanded to the court below for a new trial.

GILBERT, Circuit Judge (dissenting). I am unable to agree that the judgment should be reversed for errors in the instructions. The rule of damages as established by the Woodenware Case and Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164, is that:

"Where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern; or, if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition."

The present case is brought by the pleadings within the second clause of this rule, for the complaint alleges that the conversion occurred after the logs had been manufactured into lumber, and therefore after value had been added to it by the work of the defendant. The judge of the court below evidently took this view of the law applicable to the case, and instructed the jury that in assessing the damages they should fix the value of the timber at the time of conversion, "less the amount which was added to its value before sale," and explained the charge by saying:

"In other words, if you find that timber was so cut and removed from lands of complainant, and that there was added thereto certain value by reason of the manufacturing of said timber into lumber for the market, then the measure of damages will be the difference between the expenses incurred in the manufacturing of said lumber and the price for which it was sold in the market."

No objection was taken to the charge on the ground that the selling price was not evidence of value. The sole objection was that the only permissible measure of damages was the value of the "stumpage in the tree," and that the instructions had added to that measure "another element." But the cases above cited hold that the stumpage value is not the criterion in a case in which conversion is alleged to have occurred after the logs have been converted into lumber. In the Woodenware Case the court cited with approval Winchester v. Craig, 33 Mich. 205, in which the Michigan court said:

"The court under one branch of the charge instructed the jury to allow the market value at Detroit, or Toledo, less the sum of money which defendants expended in bringing it to market. This, we think, was as favorable as the plaintiff had any right in this case to expect. This was allowing the plaintiff more than the value of the timber when it was first severed from the realty. It did not permit the defendants to recover any profit upon what they had done, but protected them to the extent of the advances they had made; and this, we think, was correct."

The doctrine of that decision was reaffirmed in Anderson v. Besser, 131 Mich. 481, 91 N. W. 737, in which the court held that where the defendant cut the timber from plaintiff's land in good faith, under belief of title, and removed it to the railroad and sold it, the measure of damages in an action of trover therefor was the market value of the logs at the place of sale, less the reasonable cost of cutting and hauling. The latest expression of the Supreme Court of the measure of damages in such a case as this is found in United States v. St. Anthony R. R. Co., 192 U. S. 524, 24 Sup. Ct. 333, 48 L. Ed. 548, a case in

which timber had been cut in good faith on government land. The court said:

"We think the measure of damages should be the value of the timber after it was cut at the place where it was cut."

The court there rejected the value of stumpage in the tree as the measure of damages, and expressly affirmed that the measure of damages was the value of the timber after value had been added thereto by the labor and expense of cutting the same. That decision distinctly meets and conclusively answers the exception, and the only exception, of the defendant to the instruction on the measure of damages in the present case. It was followed in adopting a rule of damages in United States v. Denver & R. G. R. Co. (C. C.) 190 Fed. 825.

As to the alleged error in the instruction of the court on the question of interest, I think that the exception taken by the defendant was clearly insufficient to direct the attention of the court below to the point which is now presented to this court. The exception was:

"I also except to your honor's instruction with regard to interest."

As was pointed out in the opinion of the court below in denying the motion for a new trial (226 Fed. 852), the instruction covered two distinct propositions: First, the right of the plaintiffs to recover interest; and, second, the rate at which it was to be estimated. If at that time it was the intention of counsel for the defendant to raise the objection that the question whether interest should be allowed should have been left to the determination of the jury, the attention of the court should have been directed to that precise point. The proposition that the allowance of interest was discretionary with the jury was not presented to the court at that time, or at any time on the trial of the cause in the court below. It is not to be doubted that, if the precise objection had been pointed out and the authorities cited, the court below would have given appropriate instructions. Counsel at the conclusion of a trial ought not to be permitted to hold back an important point of objection to an instruction, and thereby mislead the trial court and secure a reversal on appeal.