**NATIONAL UNION FIRE INS. CO. v. KAP-
LAN et al.**

**No. 4343.**

Circuit Court of Appeals, Seventh Circuit.
June 13, 1930.

Rehearing Denied Aug. 19, 1930.

Robert Branand, Jr., of Chicago, Ill., for appellant.

Morris K. Levinson, of Chicago, Ill., for appellees.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

ALSCHULER, Circuit Judge.

Appellant company complains of a judgment for $30,000 rendered against it on a policy of fire insurance issued to appellees, copartners, whereunder appellees were insured against loss on automobiles not exceeding $100,000 at 3152–58 Ogden avenue, and not exceeding $50,000 at 2946–50 West Grand avenue, Chicago.

For about ten years appellees had carried on an agency for new Nash cars at their Ogden avenue place. They gave but little of their time to the automobile business, being also in the trucking, moving, and ice business. One Greenman, at and before the times in question, was the manager of their automobile business, which primarily was an agency for dealing in new Nash cars, in the sale of which it was often necessary to take in exchange used cars of various makes. Their used car business consisted entirely in the handling of cars so taken in exchange. These were usually reconditioned for sale. They employed seven or eight salesmen, and had seven mechanics in their service station, which was maintained for service on new Nash cars sold, and for old cars taken in exchange, but not as a public garage. Ordinarily the cars were kept at the Ogden avenue place, and when in the fall and winter new Nash cars were arriving in considerable numbers, those that could not be accommodated there were stored in warehouses.

In the late fall of 1926 one Beers, who had formerly been one of their salesmen, and who ran a garage on Grand avenue, proposed storage of secondhand cars in his garage, where he would keep them in condition for

driving and showing, and where customers might be brought to inspect and try them. Greenman, on behalf of appellees, agreed with him on a price of $8 a car per month for such storage, and used cars were from time to time brought there, and were there shown and sold.

On the night of January 8, 1927, while the policy was in force, the Grand avenue place burned, and forty-seven of appellees' used cars became a total loss. Proofs of loss were supplied showing the loss to be about $27,000.

Upon appellant's denial of liability, suit was brought, and to the declaration therein appellant, on August 9, 1927, filed a plea of general issue, with its affidavit, stating:

"That the defense of the defendant to said suit is as follows:

"1—That the policy upon which said suit is brought contains, among other things, the following provision:

" '6. Monthly Statements. On or before the fifteenth day of each month the Assured shall render to the Company a statement showing the actual cash value of all property at risk hereunder at the close of business on the last day of the preceding month. This Company, through its duly authorized agent and at all reasonable times, shall have access to the Assured's books and records for the purpose of determining any facts relating to this insurance. Any evasion or attempted evasion by the Assured in connection with monthly statements or payments of premium hereunder shall void this policy and shall be an absolute defense to any suit or action brought under this policy.'

"2—Affiant further states that the plaintiffs did not comply with the above and foregoing provision of said policy in that it did not render statements showing the actual cash value of all property at risk as provided for, but, on the contrary, rendered false and fictitious statements particularly for the months of September, October, November and December in the year 1926. That said statements so rendered greatly minimized the value of the property at risk and were so made for the purpose of evasion and to defraud the defendant out of the premiums due under said contract of insurance."

On October 2, 1929, a short time before the case was called for trial, appellant, by leave of court, filed an amended affidavit of the merits of its defense, wherein it stated its defense to be (1) and (2) the same as in the original statement of defense, and the following:

"3—Affiant further states that the policy upon which said suit is brought contains among other things the following provision:

" 'This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or, in case of any fraud, attempted fraud or false swearing by the assured, touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

" 'Affiant further states that on or about the 18th day of February, 1927, the plaintiffs did in a sworn statement or proof of loss allege that the fire causing the damage complained of in the plaintiff's declaration originated from an unknown cause when, in fact, said fire originated from incendiary causes, which fact was, at the time, well known to the plaintiffs.'

"4—Affiant further states that the cash values of the property alleged to have been lost or damaged through or by said fire in said declaration set forth are not the actual cash values of said property but are grossly and fraudulently inflated and constitute false swearing and an attempted fraud upon the defendant.

"6—Affiant further states that the plaintiffs caused said fire in said declaration alleged to have been set for the purpose of defrauding the defendants, and that said fire was set early on the morning of January 8th, 1927, by a person known to and acting for the plaintiff and for the purpose of establishing a fraudulent loss under the policy set forth in plaintiffs' declaration."

At the close of appellant's evidence the court, on motion of appellees, instructed the jury that defense No. 6, which alleges that appellees caused the premises at Grand avenue to be burned for the purpose of establishing a fraudulent claim under the policy, is withdrawn by the court from the consideration of the jury.

It is in this action of the court that appellant's contention of reversible error mainly inheres.

The record facts and circumstances relied on as evidence that appellees set the fire, or caused it to be set, are these: Two witnesses, a railroad engineer and a foreman, testified that their attention was attracted to what was transpiring at the garage after midnight of January 8; that they saw a front window was broken out, and some one inside throw a lighted ball of paper or other substance, which lit on top of an automobile but did not ignite the gasoline which they observed on

the floor of the garage; that they saw another person come in the rear with a lighted torch in his hand and toss it forward onto the floor, whereupon there was an explosion which blew out the front of the place, and the fire ensued; that they saw one or two persons leave the place in an automobile which had been stationed at the rear. They informed the police. They did not know Greenman or the Kaplans, and did not see them to know them until they were pointed out at the time of the trial, nearly three years afterward. They then testified that the Kaplans did not answer the description of the men they saw at the garage (one of whom was a negro), but that Greenman's build resembled that of the man who threw the torch. This was all the evidence there was of identification.

It further appeared that records were made of the used cars taken in exchange, and that while there were present records for all of the cars claimed to have been destroyed in the fire, for some of the other cars taken in from time to time the records were missing, and it was testified that some of them were destroyed—how, when, or for what purpose was not developed.

Then there is the fact that in the winter the sale of used cars fell off, with the inference that it was desirable to get rid of them. It is pointed out that this garage was at least two and one-half miles from the main place of business, in a part of the city near railroad yards, where comparatively few customers for cars would pass, and where a plan to burn them without danger of detection would be more feasible. Also it is pointed out, as bearing on this issue, that there was a fraudulent overvaluation of the cars in the proofs of loss, and that in the proofs it is stated that the cause of the fire was unknown, when, in truth, appellees knew it had been set afire.

Some of these matters involve separate issues, to which reference will be made; but so far as they bear on the issue of appellees' burning the cars or causing it to be done, it is at best extremely questionable whether, even ascribing a fraudulent and criminal motive to every act and circumstance appearing, the court was not justified in so instructing the jury upon this issue.

In the recent case of Gunning v. Cooley (March 12, 1930) 50 S. Ct. 231, 233, 74 L. Ed. 720, the Supreme Court said:

"A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' "

Applying here the rule as stated, we would be slow indeed in concluding that the court erred in thus instructing the jury under these circumstances, where all evidence seems to fall short of establishing more than a suspicion that appellees burned, or caused to be burned, this property.

But if we were inclined to hold that, however meager the evidence, this instruction should not have been given, the possible harm of it seems wholly neutralized under the peculiar circumstances here appearing.

Defense No. 3 of appellant's amended affidavit of defense is, in effect, that in the sworn proofs of loss the plaintiffs alleged that the fire originated from an unknown cause, when in fact they knew it to have originated from incendiary causes, which fact, under the clause of the policy quoted in that defense, would have rendered the policy void. Upon this defense the court instructed the jury that if appellees, for the purpose of defrauding appellant, in the sworn proofs represented that the fire originated from unknown cause, when in fact they knew it resulted from incendiary cause, this would be a defense to the suit. If appellees had set the fire, or caused it to be done, they knew the fire was of incendiary origin, and their false statement of the origin would have voided the policy; and this, under the court's definite charge, would have required a verdict for appellant. In finding for appellees the jury necessarily found that appellees did not know the fire was of incendiary origin, a finding which carries the inescapable inference that the jury found appellees did not commit the act with which defense No. 6 charged them. Thus the jury, in effect, passed upon the very issue raised by defense No. 6, to all intents and purposes the same as if defense No. 6 had not been withdrawn by the court.

It follows that, even though the court erred in withdrawing from the jury defense No. 6 as a separate issue, the error proved harmless through the submission of the other issue, which involved, in effect, the same question and the same evidence thereon.

Respecting the contention that the uncontradicted evidence shows appellees to have known that the fire was of incendiary origin,

and that therefore in submitting proofs of loss wherein the cause was stated to be unknown the policy became void, the only evidence is that when the fire was being investigated Greenman was told that some one else had told of seeing a torch or firebrand thrown on a gasoline-saturated floor, and that the fire followed. While Greenman denied this, nevertheless if he had admitted it, it did not thereby become his bounden duty to accept it as a fact; and, besides, it was not Greenman's policy, nor Greenman's property, but appellees', which was destroyed. There is no pretense of any evidence that the Kaplans knew about it. In any event, the jury passed on the evidence which bears on this issue.

■ Respecting defense No. 1 it is contended that the policy became void because of certain apparent undervaluations of the property insured which appear to have been made for a number of months preceding the fire. The policy provided for an initial premium payment of $100, and for reports monthly thereafter of the property on hand, and for additional premiums to be regulated monthly by the value of property so reported. It appears that for two or three months next before the fire the number of used cars on hand was considerably understated, whereby, it is claimed, the premiums to be paid were lower than they would be if the actual facts had been stated, and that thereby the policy became void, in accordance with the provision that an attempted evasion by 'the assured with respect to the monthly statements shall void the policy.

On behalf of appellees evidence was offered to rebut the presumption of an intended attempt at evasion, and to indicate error on the part of a more or less inexperienced lady who was the bookkeeper. This issue also went to the jury under a very clear charge thereon by the court, and we are not at liberty to disturb the conclusion of the jury thereon, favorable to appellees.

In this connection it may be stated that this contention of substantial undervaluation of the property a short time before the fire, of necessity has crushing effect upon any contention that appellees deliberately caused the fire to be set in order fraudulently to obtain money on the policy. The very last thing one contemplating such an act would do would be to undervalue the property to the very concern which was designed to be defrauded.

■ The alleged errors predicated upon defense No. 4, to the effect that in the proofs of loss the appellees fraudulently and greatly overvalued the insured property destroyed, and that thus the policy became void, must share the fate of other contentions whereon the contradictory facts were laid before the jury. In this case Greenman (who, by the way, since a few months after the fire had not been in the employ of the appellees, who have ever since continued this business) testified that, from his years of experience in handling automobiles, the burned automobiles were worth upwards of $27,000; and a witness for appellant, testifying solely from a schedule of values on used cars, placed the value at very much less. The question was peculiarly one for the jury, and their verdict thereon, following the very ample charge by the court, we cannot disturb. Our conclusion upon this issue disposes also of any contention of the manifest excess of the verdict.

■ There remains the question of interest. The court instructed the jury that if it found for plaintiffs they were at liberty to allow interest on the amount of the claim at 5 per cent. per annum from the time of filing the proof of loss to the time of trial. The objection is that the word "claim" in the charge is uncertain—that it should have been the "amount found due" rather than the claim; and also that interest is not chargeable until after the loss under the policy was payable, which, by the terms of the policy, was sixty days after proof was made.

The object of the statute requiring that objections to the court's charge be pointed out before the jury retires is for the very laudable purpose of enabling inadvertent misstatement of law or fact to be corrected.

At the close of the court's charge appellant's counsel said, "We wish to note an exception to the instruction of the court with reference to the allowance of interest." If the question were whether interest was or was not allowable, the exception would doubtless have been entirely sufficient; but where it involved, not the general principle, but only the basis of computation of the interest —whether on the "claim" or on the amount found due, or whether to begin at the time the proofs were filed, or sixty days thereafter —this was not called to the court's attention by this very generally stated exception; and the test of whether this should have been done is found in the quite inevitable conclusion that, had the court's attention been so called, the correction would have been promptly made.

■ The contention is made that appellant's motion for a directed verdict should have been granted because of a provision of the

policy that the loss was payable to Passen Securities Company as its interest may appear, and that therefore the Passen Company was a necessary party to the action. Greenman testified that Passen Securities had no interest in fact. Appellant contends that Passen cannot be bound by Greenman's evidence. If there was such omission to make a necessary party, this would appear from the policy itself, and such defense should have been set up in apt time, and by appropriate pleading. A motion at the close of plaintiffs' evidence is neither proper practice, nor in apt time for the initial suggestion of such a defense.

The statement in appellant's brief that this question was raised promptly, "just as soon as it appeared that the payee under this clause did have an interest," is manifestly untrue, for in the same connection, and in the same brief, it is stated: "The proof of loss offered in evidence indicated that Passen Securities Company did have some interest, for it recites that two of the automobiles destroyed were under a trust agreement to Passen Securities Company (Trans. 22)." The same proof of loss was in appellant's possession since shortly after the fire, and what appellant knew on that subject when it made the motion for a directed verdict, it knew long before the action was begun.

Greenman's testimony denying any such interest in Passen is not in conflict with what is said in the proofs. Assuming that when the proof was made Passen had some interest in two of the cars, it is quite likely that by the time Greenman gave his testimony that interest had ceased.

The judgment is affirmed.

EVANS, Circuit Judge, dissenting.