## FIRST NAT. PICTURES, Inc., et al., v. ROBISON.*
### No. 7260.

Circuit Court of Appeals, Ninth Circuit.

July 11, 1934.

Rehearing Denied Aug. 29, 1934.

Irving M. Walker, J. R. Files, Harold A. Jones, and Herman F. Selvin, all of Los Angeles, Cal. (Freston & Files and Loeb, Walker & Loeb, all of Los Angeles, Cal., of counsel), for appellants.

Zach Lamar Cobb and Earl A. Littlejohns, both of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

From a judgment for $35,336.15 in favor of plaintiff and appellee, appellants have appealed. For convenience we will refer to the parties as plaintiff and defendants rather than appellee and appellants.

This action was brought to recover damages alleged to have resulted to the plaintiff and her predecessor by reason of a combination or conspiracy of the defendants alleged to be in restraint of trade in violation of the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15 note). The plaintiff and her husband owned and operated the Seville Moving Picture Theater in the city of Inglewood, Cal. The defendants are producers and distributors of moving picture films such as were used in the plaintiff's theater. In an equitable action brought by the United States government, the defendants were declared guilty of a combination in restraint of interstate commerce and enjoined from continuing the use of certain provisions concerning arbitration in a standard form of contract between the exhibitors of moving pictures and the producers and distributors thereof theretofore used by the defendants, and from acting in concert under certain rules of the defendants for the enforcing of the awards of the arbitration boards set up under the terms of the standard form of contract, by a boycott of the theater owner who failed or refused to abide by the award. Paramount Famous Lasky Corp. et al. v. United States, 282 U. S. 30, 51 S. Ct. 42, 75 L. Ed. 145; Id. (D. C.) 34 F.(2d) 984. The plaintiff relies on this adjudication as establishing the fact of monopoly and as tolling the statute of limitations. 15 USCA § 16, ch. 323, § 5, 38 Stat. 731. The present controversy relates to the matter of zoning of territory by the defendants for the purpose of fixing the time for the exhibition of moving pictures, and, consequently, the priority of such exhibition and the rental to be charged for such use. It appears that the commercial life of a moving picture is very short; about 50 per cent. of the return therefrom being derived in the first run showings of such picture. The first exhibit of moving pictures is made in the downtown areas of large cities. Thereafter the pictures are used in suburban moving picture houses and in smaller cities and towns. The first showing in any zone is called the first run of

*Writ of certiorari denied 55 S. Ct. 125, 79 L. Ed. ——.

the picture and any showing thereafter of the same picture in the same zone is called the second or subsequent run of the picture. If no exhibitor in the zone desired a certain picture as first run, it was sometimes rented at the price of a second run picture to an exhibitor who was in fact the first to run the picture in the zone. In the suburban first run a great advantage arises to the exhibitor by reason of the advertisement of the first showing in the large centers and the popularity of the film due to a successful showing therein. Exhibitors are expected to contract at one time for all the films of a given producer which the exhibitor expects to use for one year. The exhibitor may contract for all of the productions of one or several producers or for a part of the productions of any number of producers. The form of contract with each producer is the standard form above referred to, but the price of each film and the date of its showing is arranged with the producer which furnishes the film. These dates of exhibition and the price of the film to the exhibitor are arranged with reference to the area or zone in which the picture is shown. The defendants claim that the zones are not fixed by the producers but by agreement between the local agents of the producers and the exhibitors, each being represented by three members of a joint committee for zoning, and, consequently, that, if the agreement to zone and to supply pictures according to the zones so fixed is illegal that the theater owners, including the plaintiff, are in pari delicto. The plaintiff contends that the defendants act in concert in selling exhibition rights of their respective films and that films cannot be had from any of the defendants except in accordance with the zoning agreement, while the defendants claim that the zoning is voluntary and that compliance with such zoning is not only optional with each producer, but that in fact all have not conformed thereto. These respective claims were presented in evidence and to some extent were resolved by the verdict of the jury. They involve a number of legal principles, a consideration of which may be deferred until after a further statement of the facts. Suffice it to say for the present that what the plaintiff is complaining of is that the Seville Theater was arbitrarily removed from one zone to another, and that by reason of such changed zoning she has been damaged because of her inability to secure first and second run pictures, as theretofore, but was compelled to secure them in accordance with the new zoning. The Seville Theater was located at the extreme northeast corner of the city of Inglewood. Inglewood is bounded on the north and east by Los Angeles City. We may ignore a cemetery which forms a part of the east boundary of Inglewood and lies between the boundaries of the two cities. Thus, the Seville Theater is at the point of a wedge extending about a mile and three-quarters into the side of Los Angeles City. The Seville is located in residential territory. There is nothing to distinguish the territory in the city of Los Angeles from that in the city of Inglewood other than the street marking the boundary between the two municipalities. The plaintiff and her husband, who was her business partner, selected the location of the Seville Theater, which was built for them and purchased by them in February of 1924 because of its favorable position with relation to zoning. The Seville Theater was able to secure motion pictures at the same time— that is, first or second run—as in the downtown theaters in Inglewood, the Inglewood Theater, and later the Granada Theater, which was opened in the fall of 1924, the former 1.83 miles away and the latter 1.73 miles away from the Seville, but separated from each other by only a block. The nearest theater in Los Angeles City was the Rivoli, 2.95 miles distant from the Seville. Subsequently another theater, the Carlton, was opened in the fall of 1924 in Los Angeles, 2.30 miles distant from the Seville, and .65 miles south of the Rivoli, both being located on Western avenue. By the zoning system in force at the time the Seville was built, it was enabled to secure first run pictures before the Rivoli or any other theater between the Seville and the larger downtown theaters in Los Angeles, some 10 miles distant. Later the Mesa Theater was built in Los Angeles City at the corner of Slauson avenue and Crenshaw boulevard, distant .75 miles from the Seville, and opened April 15, 1926. The Mesa seated 1,700 and the Seville 786, the Rivoli between 900 and 1,000, the Granada 1,000, and the Carlton about 1,200. Thus, after the Seville was opened, theaters having four times its seating capacity were opened in that vicinity. When the Mesa Theater was building, the zoning committee of the producers and exhibitors decided that the Mesa and Seville Theaters were competing theaters and put them in the same zone so that they could compete on equal terms. This arrangement was protested by plaintiff's husband, who was managing the Seville Theater, but his protest was overruled. As this protest is a fair statement of the position which

the plaintiff now seeks to maintain, and which was accorded to her by the verdict and judgment in the court below, we quote from the letter of protest as follows:

"A resolution adopted by the Film Board of Trade on December 22nd, 1925, regarding rezoning of the Seville Theatre, has just come to my attention. As this resolution is clearly detrimental to my business, I must ask you to reconsider this matter, for the following reasons,—

"1. It would make my playing dates from three to five weeks later than the present ruling allows me.

"2. The Seville Theatre is located in Inglewood, outside of the city of Los Angeles. Our patrons are largely Inglewood people; we are paying taxes in Inglewood and the rules of the Film Board of Trade for zoning, regarding territory outside of Los Angeles City limits, should continue to apply in the case of the Seville Theatre.

"3. My past Exchange experience has taught me that it would be impossible to secure play dates on the city break week, due to the shortage of prints at that time, and would therefore put my playing dates back to at least two weeks after the City break week. This would naturally decrease my patronage to the extent, that it would be impossible for me to present the type of pictures that I have been in the habit of presenting; even at greatly reduced prices.

"4. When we built the theatre about two years ago, we selected Inglewood because we had the advantage of earlier play dates than we could of had, had we built in Los Angeles. Had this not been the case we would of selected a more favorable location in Los Angeles.

"5. Our policy is, and always has been, to feature pictures. We have only a few acts of Preview Vaudeville on Wednesday nights. We are therefore depending on pictures for the success of our business.

"6. According to the resolution the zoning was changed to meet the requirements of a new theatre in Los Angeles, which is to open soon. While the new Mesa has my best wishes, its success must not be sought by applying unfair methods against the Seville.

"7. Mr. G. H. Westing my business associate, joins me in protesting against any change in zoning for our theatre, which beyond any doubt will result in a serious loss to our business, and we must insist that our present arrangement be continued. Yours very truly, The Seville Theatre."

The position of the plaintiff is also shown by an instruction to the jury proposed by her and given by the court, as follows:

"If you find from the evidence that the defendants herein entered into any arrangement, conspiracy or agreement whereby they undertook, or arranged, by concert of action, not to furnish motion picture films to the Seville Theatre, except in accordance with the zoning and clearance rules and regulations, as fixed and provided by the ruling of the Los Angeles Film Exchange Board of Trade, Inc., on December 22, 1925, as set forth in the so-called 'black book,' and if you further find that, pursuant thereto, defendants thereafter refused to enter into contracts with plaintiff or her associate, for the exhibition of first or second-run pictures at said Seville Theatre, upon an equal basis with competitive theatres in that vicinity, and that, as a result thereof, plaintiff, or her associate, suffered injury to their business and/or property, then your verdict should be for the plaintiff."

This instruction to the jury, in view of the uncontroverted facts concerning the resolution of December 22, 1925, and the parity of the Seville and Mesa Theaters, and the parity or superiority of the Seville Theater with or over the Rivoli and Carlton Theaters, could mean nothing more nor less than that the plaintiff was entitled to a verdict if she was not accorded parity of play dates with the downtown Inglewood theaters; in short, if she was not accorded priority over a new theater only 6½ blocks away. Parenthetically we call attention to the fact that, although this and many other instructions to the jury were excepted to by the defendants' attorneys who tried the case in other respects with meticulous care, no ground for the exceptions were stated to the court, and, consequently, such exceptions cannot be considered. Royal Finance Co. of Cal. v. Miller (C. C. A.) 47 F.(2d) 24; Sacramento, etc. Co. v. Loucks (C. C. A.) 36 F.(2d) 921; Sacramento, etc., Co. v. Johnson (C. C. A.) 36 F.(2d) 925; Standard Acc. Ins. Co. v. Van Altena (C. C. A.) 67 F.(2d) 836; Order of United Commercial Travelers, etc., v. Greer (C. C. A.) 43 F.(2d) 499; Sacramento, etc., Co. v. Weber (C. C. A.) 41 F.(2d) 514; National Union Fire Ins. Co. v. Kaplan (C. C. A.) 41 F.(2d) 569; State Life Ins. Co. v. Sullivan (C. C. A.) 58 F.(2d) 741; Hammond v. U. S. (C. C. A.) 246 F. 40; Morse v. Tillotson & Wolcott Co. (C. C. A.) 253 F. 340, 1 A. L. R. 1485; Dayton Rubber Mfg. Co. v. Sabra (C. C. A.) 63 F.(2d) 865;

Al G. Barnes Show Co. v. Eichelbarger (C. C. A.) 269 F. 132.

The damages claimed in the complaint were loss of profits and loss of the theater itself, by surrender to vendor on account of unpaid purchase price, all "because of the arbitrary actions of the defendants * * * in maintaining and enforcing the reclassification and rezoning mentioned in paragraph XVI hereof [December 22, 1925]." The trial court instructed the jury as follows:

"Plaintiff charges that the unlawful combination and conspiracy was the agreement among the defendants and others to release their pictures only according to zones or areas by which the period allowed for exhibitions of the released pictures was determined. That the defendants agreed among themselves to observe the zoning thus established, and thereafter refused to furnish pictures to plaintiff for exhibition purposes, except in accordance with the zoning rules and regulations thus established, and that as a result of this agreement the plaintiff and her associates were injured in their business and property."

 It must be obvious at this juncture that the plaintiff is claiming a vested interest in the very monopoly she attacks as invalid; that is, she claims the benefit of the zoning in existence at the time the Seville Theater was opened, while denouncing the rezoning as a violation of the Sherman Anti-Trust Act, because of its restraint of trade and its interference with interstate commerce. If it was unlawful for the defendants to combine in 1925 to define zones of competition in the exhibition of motion pictures, it was equally unlawful in 1924 when the Seville Theater was opened. On the other hand, if it was legal to establish such zones in 1924, it was equally so in 1925, and the establishment of a new theater in such close proximity to the Seville as the Mesa Theater justified a change in the interest of fair competition. To repeat, the plaintiff's real contention is that a competing theater was allowed to compete with her on equal terms and not that competition was stifled by undue restraint. The situation is admirably stated on page 243 of appellants' overlong brief (360 pages) as follows:

"Thus, again we repeat, plaintiff's complaint boils itself down to the rather anomalous contention that the defendants violated the Sherman Act to her damage, because they refused to continue to sell her pictures in accordance to a zoning and clearance plan which in itself she claimed to be a violation of the Sherman Act."

Upon what basis, then, can the plaintiff claim a right of recovery under section 7 of the Sherman Anti-Trust Act (15 USCA § 15 note, section 4, 38 Stat. 731 [15 USCA § 15]), which gives a right to treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." Plaintiff's allegation and proof were of damage from rezoning and not of damage from zoning per se. The allegation we have quoted above. The proof offered was a comparison of receipts and profits before and after rezoning. The evidence presented no other basis for estimating the damage suffered by the plaintiff.

The motion of the defendants for a directed verdict in their favor should have been granted. In view of this conclusion, it is unnecessary to consider the many other questions involved which are carefully briefed. It should be observed that we are not passing upon the validity of the method of zoning adopted by the parties hereto.

Judgment reversed.